489 P.2d 15

**CONTINENTAL NATIONAL BANK, a national banking association, Appellant and Cross-Appellee,**

v.

**Robert J. EVANS et al., Appellees and Cross-Appellants.**

**No. 10327.**

Supreme Court of Arizona,
In Division.

Sept. 30, 1971.

Rehearing Denied Oct. 27, 1971.

Murphy, Posner & Franks, by John R. Franks, Phoenix, for appellant and cross-appellee.

Lawrence C. Cantor, Phoenix, for appellees and cross-appellants.

CAMERON, Justice.

This is an appeal from a judgment in favor of plaintiffs, Robert Evans and Andrew and Mary Evans, mother and father of Robert Evans, against the defendant Continental National Bank, which judgment was rendered after a jury verdict and acceptance of remittitur by the plaintiffs, Andrew and Mary Evans.

Defendant, Continental National Bank, appealed as to Andrew and Mary Evans. Robert Evans, Andrew Evans and Mary Evans also appealed, but it would appear from the briefs filed herein that they have abandoned their appeal. We are therefore concerned only with the judgment as it affects the Continental National Bank and Andrew and Mary Evans, husband and wife.

We are called upon to determine:

1. Did the plaintiffs, Andrew and Mary Evans, have sufficient interest to maintain an action against defendant bank for sale by the bank of stock transferred to Robert Evans and held by the bank as collateral for a loan to Robert Evans?

2. Was it proper for the trial court to permit amendment of pleadings to conform to the evidence?

3. Was there sufficient evidence to support a judgment for punitive damages?

Viewing the evidence most favorably to the prevailing party, Lane Title and Trust Company v. Brannan, 103 Ariz. 272, 440 P.2d 105 (1968), the facts necessary for a determination of this matter on appeal are as follows. A loan was made by the bank to Robert Evans on 4 February 1965 in the amount of $8,500. 303 shares of Jefferson National Life Insurance Company stock owned by Andrew and Mary Evans were deposited with the bank as security, and a "General Collateral Pledge Agreement" signed by all three parties. The pledge agreement contained the following provisions:

"12. At the option of the bank and with or without demand or notice all or any part of the secured credit shall become due and payable ·immediately irrespective of any agreed maturity upon the happening of one or more of the following events: "* * * (3) any actual or reasonably anticipated deterioration, impairment, decline or depreciation in the value or market price of the collateral or any part thereof which in the sole judgment of the bank causes the collateral to become unsatisfactory as to character or value, * * *.

\* \* \* \* \* \*

"13. Upon or at any time after the happening of any of the defaults specified in ·the preceding paragraph the bank at its option may declare terminated any agreement for the granting of further credit to us or any of us.

\* \* \* \* \* \*

"27. Any person signing this agreement as an accomodation pledgor ·does so without personal liability and solely for the purpose of pledging and does pledge to the bank, as security for the credit ·of other signers, only the property described in the receipt given him by the bank."

Title to the stock was transferred to the name of Robert Evans for this purpose. On 4 February 1966, the loan was' renewed for the same amount.

Andrew Evans testified that the bank's representative told him that the bank would notify him and his wife before the stock would be sold. Mrs. Evans testified that the stock certificate had been signed over to Robert and given to the bank at the request of the officer of the bank. On 26 August 1966, an officer of the bank wrote to Robert Evans as follows:

"Mr. Robert J. Evans
7530 Clearwater Parkway
Phoenix, Arizona

"Dear Mr. Evans:

"In view of the recent decline in the stock market we have been reviewing the

margin on loans secured by stock and would appreciate you contacting Mr. Charles Young, one of our Bank's Commercial Loan officers, in connection with the margin on your loan. You may call him at 277-5577, extension 207. Thank you very much.

Sincerely,

R. F. Stone      Administrative Vice
dg             President"

On 31 August 1966, Andrew and Mary Evans went to the bank and met with Young. Mr. Young testified that he told them that additional security was needed and that Andrew Evans asked for 60 days to get the security:

"Q So when they left you had not rejected the sixty days they asked for?

"A Other than saying something had to be done about the situation.

"Q But other than that you didn't reject the sixty days they asked for?

"A No.

"Q Nevertheless, the stock was sold within nine days?

"A Yes.

"Q Without any further notice to them?

"A There were no further conversations with them, no."

Mr. Thayer Lindauer, attorney, testified that on behalf of the Evanses he discussed the situation with Mr. Young of the bank on two occasions around the end of August and early September. As to the first conversation, Mr. Lindauer testified:

"A * * * And Mr. Young said, well, the bank was concerned that no decision had been made, and that he would let me know if the bank was going to go along with the situation, or if the bank wanted additional security, and he said they would. And I think that is as accurately as I can remember it.

"Q Did he tell you that they would be notified before any sale of any stock would be taking place?

"A That I would be notified. He apparently talked to Andy Evans before, but he told me he would let me know and give us opportunity to post additional security.

"Q Let you know when they were going to sell the security?

"A Yes, because they hadn't made a decision as far as I know at that point. The market was still falling at that point.

"Q And did you ever receive a notice after that from Mr. Young or the bank itself, or any employee thereof that they were going to sell the security?

"A No, I did not."

The bank applied the proceeds of the sale and the amount found in Robert's checking account to the amount due upon the note, leaving the amount of $2,010.69 plus interest still due and owing by Robert Evans to the bank.

The jury returned a verdict of $1,000 in favor of Andrew and Mary Evans for general damages, and $15,000 punitive damages. The court ordered a remittitur, the remittitur was accepted, and the judgment was signed in favor of Andrew and Mary Evans for $78.24 general damages and $7,-500 punitive damages. The defendant, Continental National Bank, on their counterclaim, recovered $2,010.69 plus $250 attorney's fees against the plaintiff Robert Evans.

## DID ANDREW AND MARY EVANS HAVE SUFFICIENT INTEREST TO MAINTAIN THE ACTION?

■ The appellant bank contends that appellees, Andrew and Mary Evans, had no title interest in and to the stock nor right to immediate possession thereof at the time of the sale of the stock by the bank and therefore had no standing to bring the action. With this we disagree.

The testimony supported the contention that the stock was previously owned and pledged by Andrew and Mary Evans, and

was transferred to the name of Robert at the request of the bank. The evidence supports the contention that equitable title, however, remained with Andrew and Mary Evans. The stock, as pledged originally, was owned exclusively by Andrew and Mary Evans, and the note for which the stock was pledged was in the name of Robert Evans. The bank, after accepting the stock as collateral, requested that Andrew and Mary Evans transfer legal title to Robert Evans. Although the name on the stock certificate itself was changed to Robert, it was apparent that the appellees as between themselves did not consider title to be exclusively in Robert, but merely legal title to be in his name as security until the loan was repaid. The bank had full knowledge of these facts and cannot now rely exclusively upon the named owner of the stock to defeat the interest of the plaintiffs, Andrew and Mary Evans.

With this special or equitable interest, Andrew and Mary Evans had standing to enter into an oral contract with the bank by which the bank would forbear selling the stock in return for which Andrew and Mary Evans would provide additional security should it be needed. We believe that there was standing to sue when the bank breached that agreement and that the trial court did not err in denying the bank's motion for directed verdict as to appellees Andrew and Mary Evans.

## WAS IT PROPER FOR THE TRIAL COURT TO PERMIT AMENDMENT OF THE PLEADINGS?

Rule 15(b) of the Rules of Civil Procedure, 16 A.R.S., states:

"15(b)  Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so

to amend does not affect the result of the trial of these issues. * * *"

The purpose of this rule, allowing amendments of pleadings to conform to the evidence, is to permit the case to be ultimately tried on its merits so that the parties to the litigation may, in one trial, receive all relief to which they are entitled, Dixon v. Feffer, 84 Ariz. 308, 327 P.2d 994 (1958); Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262 (1952), and also to prevent a multiplicity of suits. The question of whether or not to permit amendment of pleadings to conform to the evidence is within the discretion of the trial court, and such amendments should be liberally allowed in the interests of justice. Beckwith v. Clevenger Realty Co., 89 Ariz. 239, 360 P.2d 596 (1961).

This court has required the objecting party to show actual and not merely legal surprise before a court will be found to have abused its discretion in granting a motion to amend a pleading to conform to the evidence. In Re Estate of McCauley, 101 Ariz. 8, 415 P.2d 431 (1966). In the instant case the prayer of plaintiffs' complaint asked for the return of the stock. The testimony at the trial indicated that the stock had been sold and was not available. We find no error in the trial court allowing the plaintiffs to amend the complaint at the close of the evidence to allege damages based upon the sale of the stock.

## WAS THE DEFENDANT ENTITLED TO DAMAGES?

### A.  Actual Damages

The bank contends that there was no showing of actual damages and therefore nothing upon which to base punitive damages. The verdict of the jury was for $1,000 in general damages as to Andrew and Mary Evans. The trial court reduced the verdict by way of remittitur to $78.24, this amount being the amount of the brokerage fees in selling the stock which amount was deducted from the amount credited to the balance of the loan. Generally, actual damages must be shown before exemplary or punitive damages may be awarded. Craviolini v. Scholer & Fuller Associated

**382**

Architects, 101 Ariz. 33, 415 P.2d 456 (1966). We hold that actual damages were shown and properly found.

### B. Punitive Damages

■ There are two theories involved in this case—one of contract and one of conversion. The bank contends that its action was not a conversion, but, if anything, a breach of a supplemental oral contract to give further notice before sale. Accepting this theory for the purposes of analysis, the authorities are generally in accord that punitive damages cannot be awarded for such a breach. 22 Am.Jur.2d, Damages, § 245; American Law Institute, Restatement of Law of Contracts, § 342; Williston on Contracts, Rev.Ed. § 1340; Sutherland on Damages, 4th Ed., Exemplary Damages § 390.

■ The Evanses contend, however, that this was a conversion. While the bank admits it may be proper to award punitive damages in an action for conversion, the mere fact of actual damages and conversion does not mean that punitive damages must be awarded. There must be conduct on the part of the defendant amounting to aggravation, outrage, malice or willful and wanton misconduct. See Prosser, Torts, 3rd Ed. § 2; Lutfy v. Roper, 57 Ariz. 495, 115 P.2d 161 (1941); Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966). This record, upon review, is insufficient to substantiate a finding of spite, ill will or willful and wanton misconduct. Thus, even under a conversation theory, punitive damages will not lie. The improper sale, while it may substantiate a conversion action, will not, absent further evidence, support a claim for punitive damages. See California Bank v. Daniel, 36 Ariz. 549, 288 P. 7 (1930).

The matter is reversed as to the punitive damages between Andrew and Mary Evans and the Continental National Bank, and affirmed in all other respects, each party to bear their own costs.

STRUCKMEYER, C. J., and LOCKWOOD, J., concur.