**Alfred B. WATERS, Appellant (Defendant below),**

v.

**Ernest H. TRENCKMANN and Marilyn Trenckmann, Appellees (Plaintiffs below).**

**No. 4087.**

Supreme Court of Wyoming.

Dec. 7, 1972.

Rehearing Denied Jan. 23, 1973.

Walter C. Urbigkit, Jr., and Edward P. Moriarity, of McClintock, Mai, Urbigkit & Moriarity, Cheyenne, for appellant.

Byron Hirst, of Hirst, Applegate & Dray, Cheyenne, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

McINTYRE, Chief Justice.

Ernest H. Trenckmann and Marilyn Trenckmann as buyers entered into a written contract for the purchase of a ranch from Alfred B. Waters. The ranch consisted of some 4,442 acres of deeded land, 3,951 acres of leased lands, and Forest permits in approximately 2,200 acres. The lands were in Platte, Converse and Albany Counties. The purchase included all cattle, horses, hay, machinery and equipment on the ranch.

The agreed purchase price was $725,000. A total of $250,000 was to be paid in 1968 as a down payment. The balance of $475,000 was payable in annual payments of $36,000 each, commencing November 15, 1969.

The sales contract, which had been entered into September 24, 1968, became the subject of a suit initiated by the buyers against the seller May 29, 1970. Plaintiffs' complaint alleged Waters had made certain false factual representations in connection with the sale and that there were numerous breaches of contract and breaches of warranty. It was then alleged, as a result of Waters' breach of contract, breach of warranty, misrepresentations, and the willful, fraudulent and wrongful conduct of Waters, the Trenckmanns suffered damages "from the failure of Waters to deliver the property purchased."

Upon trial of the issues joined in plaintiffs' suit, the jury awarded plaintiffs actual damages in the amount of $30,070 and punitive damages in the amount of $30,000. Judgment was entered accordingly and Waters has appealed.

The most important question we have for determination is whether the award for punitive damages can stand. In considering that question, we start with the general rule that damages for breach of contract are limited to pecuniary losses sustained. We believe the rule is well stated in 22 Am.Jur.2d, Damages § 245, p. 337, in these words:

"As a general rule, damages for breach of contract are limited to the pecuniary

loss sustained. That is to say, exemplary damages are not, ordinarily or as a rule recoverable in actions for breach of contract." [1]

The following cases support and follow the general rule that punitive damages may not be recovered in actions for breach of contract: Continental National Bank v. Evans, 107 Ariz. 378, 489 P.2d 15, 19; Williams v. Speedster, Inc., Colo., 485 P.2d 728, 730; Ash v. Barrett, 1 Ill.App.3d 414, 274 N.E.2d 149, 152–153; Alsip Homebuilders, Inc. v. Shusta, 6 Ill.App.3d 65, 284 N.E.2d 509, 512; Graham v. Turner, Tex.Civ.App., 472 S.W.2d 831, 839; Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co., 3 Cir., 298 F.2d 277, 282, 285; and Green v. DeVoe Sales, Inc., 206 Kan. 238, 477 P.2d 944, 950.

There are matters of special interest in some of the cases we have just listed, which we think should be pointed out. For example, in the case of Ash v. Barrett, at 274 N.E.2d 152–153, the breach claimed was that the defendant refused possession knowing plaintiffs were living in a motel, meanwhile the defendant willfully allowed the house to remain vacant. Punitive damages were claimed on the theory that such damages are permissible in exceptional cases for a breach of contract when the breach amounts to an independent willful tort. The court held both events occurred after the breach and did not make an unusual case for breach of contract; and the breach was properly remedied by *compensatory* damages.

The idea that recovery is limited to actual damages in contract cases is expressed in Graham v. Turner, at 472 S.W.2d 838. The court held the case there involved fell into the category of a suit for breach of contract, for which the proper redress is a money judgment for actual damages, and for which exemplary damages are not authorized.

In the case we are dealing with, the Trenckmanns were made whole and fully compensated when they were awarded their actual damages. There was no such unusual or exceptional case of breach of contract as would call for compensating them a second time.

In the case of Williams v. Speedster, Inc., at 485 P.2d 730, which we have cited, the court said plaintiff's complaint clearly indicates it does "sound in contract" and there were no factual allegations which would justify exemplary damages. Also, the court which decided the case of Alsip Homebuilders, Inc. v. Shusta said, at 284 N.E.2d 512, the general rule requires that punitive damages cannot be recovered in an action for breach of contract. It was expressly stated that Illinois seems to adopt the general rule; that the authority is extensive; and that a review of the authority in other jurisdictions confirms that the vast majority does not allow punitive damages to be awarded in contract actions. Numerous cases were cited.

Although appellant's brief cites texts and cases in support of his contention that punitive damages are not recoverable in this case, counsel for the appellees undertakes to defend such damages by the use of general statements without the citation of authority. The subject is treated in appellees' brief in two paragraphs which we will quote:

"The record so far certainly supports a conclusion by the jury that Waters made certain representations, that the representations were false, that Trenckmann relied thereon, that Trenckmann was justified in relying thereon and that Trenckmann was damaged. The jury could conclude from this evidence that Waters acted fraudulently, wilfully or wantonly, justifying a grant of punitive damages. In addition the jury was justified in finding that Waters deliberately

[1] Other text authorities to the same effect include: American Law Institute, Restatement of Law of Contracts, § 342; Williston on Contracts, Rev.Ed. § 1340; Sutherland on Damages, 4th Ed., Exemplary Damages § 390.

tried to break Trenckmann by taking all of his cash including large amounts borrowed at high rates of interest and then acted in such a manner as to make it impossible for him to make subsequent payments. Attention is directed to the following portion of the record (R. 777–778):

[At this point testimony is quoted pertaining to the financial condition of Trenckmann after he made the $250,000 down payment provided for in the sales contract.]

"In addition the credibility of Waters and his motives were impeached beyond question by his demeanor and testimony at the trial and his conduct as shown by the record in other particulars. This will be discussed ·at some length elsewhere in this Brief."

### Fraud

█ If the Trenckmanns overstretched themselves and agreed to make a larger down payment than they could financially afford, it would not entitle them to punitive damages from Waters. And, if Waters committed any wrongful acts after a contract between the parties had been entered into, the proper remedy would be for breach of contract. Also, if the credibility of Waters and his motives were impeached, that would have nothing to do with the award of punitive damages.

Thus, appellees have offered nothing in justification of punitive damages except breach of contract and a suggestion of fraud. We find nothing in the record to indicate the jury found Waters guilty of fraud nor to indicate the award of punitive damages was based on fraud.

If fraud was present, it would necessarily have to relate to false representations of existing facts made prior to execution of the purchase agreement. Those false representations would have to be representations which were relied on by plaintiffs to their damage.[2] The Trenckmanns have not sought to rescind the purchase contract. If they had known the truth concerning facts which they claim were misrepresented, would they have refused Waters' offer of sale?

Appellant argues that Trenckmanns did not rely on any false representations made by Waters; that the Trenckmanns were admittedly experienced people in the ranching business; that they visited the Waters ranch several times before buying it, inspecting not only the ranch itself but also all livestock, hay, machinery and equipment; and that the Trenckmanns made extensive inquiry in the area concerning the ranch and Waters. On the basis of these undisputed facts, appellant asserts Davis v. Schiess, Wyo., 417 P.2d 19, 22, is applicable and plaintiffs failed to prove they relied upon any misrepresentations made by Waters.

█ Without deciding whether an element of fraud was present in Waters' representations concerning his property, we can say punitive damages are not recoverable in any event, in this case. For punitive damages, there would have to be conduct on the part of defendant amounting to aggravation, outrage, malice or willful and wanton misconduct.[3]

█ We deem it important to reemphasize at this point that fraud must relate to false representations or conduct taking place prior to the execution of contract. The remedy for wrongful acts occurring afterwards would be compensatory damages for breach of contract. Waters' concern when he was trying to sell his property was to get the price he wanted. He was dealing with strangers toward whom he had no malice or reason to hate. There is no evidence of spite, ill will or willful and wanton misconduct on the part of Waters in the inception of the contract.

2. See Lawson v. Schuchardt, Wyo., 363 P.2d 90, 92; and Davis v. Schiess, Wyo., 417 P.2d 19, 21.

3. See Prosser, Torts, 3rd Ed. § 2; Lutfy v. Roper, 57 Ariz. 495, 115 P.2d 161 (1941); Nielson v. Flashberg, 101 Ariz. 335, 419 P.2d 514 (1966).

We are inclined to believe the jury was misled in this case because the trial judge did not make this distinction. The jury was merely instructed that it could award punitive damages if it found the defendant guilty of willful or wanton conduct which caused injury to plaintiffs. There was no attempt to fix the time when willful or wanton conduct must have taken place.

In support of our reasoning, we call attention to Continental National Bank v. Evans, 107 Ariz. 378, 489 P.2d 15, 19. Two theories were involved in that case—one of contract and one of conversion. The court recognized it was proper to award punitive damages in an action for conversion. It held, however, the mere fact of actual damages and conversion does not mean punitive damages must be awarded.

The supreme court of Arizona expressly held that for punitive damages there must be conduct on the part of defendant amounting to aggravation, outrage, malice or willful and wanton misconduct. The court there said the record, upon review, was insufficient to substantiate a finding of spite, ill will or willful and wanton misconduct.

We likewise say, upon review of the record before us at this time, we find it insufficient to prove spite, ill will or willful and wanton misconduct on the part of Waters—at the time he was trying to sell his ranch and is alleged to have misrepresented facts then existing.

### Uniform Commercial Code

We have another reason for saying punitive damages are not allowable in the instant case. Misrepresentations alleged by plaintiffs have to do primarily with livestock, hay, and personal property. As far as land is concerned, the buyers certainly inspected it and cannot very well claim to have been misled about it.

As we read § 34–1–106, W.S. 1957, 1971 Cum.Supp., buyers cannot claim punitive damages on account of an alleged fraud pertaining to chattels. They can of course be made whole by recovering all of their actual or compensatory damages. The section provides:

> "The remedies provided by this act [§§ 34–1–101 to 34–10–105] shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed *but neither consequential or special nor penal damages may be had except as specifically* provided in this act or by other rule of law." [Emphasis supplied.]

No provision of the commercial code or other rule of law has been called to our attention which "specifically" provides for punitive damages in a case like the one before us. In view of § 34–1–106 and in view of all the other considerations we have referred to, we must hold plaintiffs are limited to the pecuniary losses they have sustained. They are properly remedied by *compensatory* damages and the award for punitive damages must be vacated.

### Reformation of Contract

The sales contract stated that the seller owned some shipping corrals and a cabin in the mountains. This property was described and referred to as 161 acres. It was specified that seller was purchasing this land under a contract for deed and that buyers would have the option to purchase such land for a stipulated amount.

The plaintiffs claimed in their complaint that a part of this mountain land was left out in the description used and that the contract should be reformed to include the additional acres, which were sometimes referred to as 11.72 acres and sometimes as 17 acres. The trial court found there was indeed a mutual mistake in the description and the contract should be reformed by adding to the 161-acre description the additional tract as claimed by plaintiffs.

If we understand appellant's position correctly, he does not deny that it was intended for buyers to have an option to purchase the additional tract (whether it consists of 11.72 acres or 17 acres). His at-

torneys state the issue is whether the same requirements of title will apply, if and when the option to purchase is exercised, as does apply to the 161 acres. In other words, the attorneys seem to suggest Waters' title to the additional tract may be clouded and he should not be required to warrant.

██ The evidence was such that the trial court could believe, and it apparently did believe, no distinction was intended with respect to title between the 161 acres and the additional tract. We will not disturb the reformation order.

### Other Assignments

Appellant has made several other assignments of error. They have to do with such matters as admission of evidence, exclusion of evidence, jury instructions, sufficiency of evidence, denial of directed verdicts on certain issues, the granting of an accounting, the denial of motions, and the court's decision with regard to the computation of interest.

██ We have overlooked none of these assignments. All of them have been carefully reviewed and considered. We find no prejudicial or reversible error in connection with any of these additional assignments. We are impressed with the fact that the trial in this case was long and difficult. The record discloses that the trial judge exercised extreme caution throughout the trial to avoid reversible error. He was fair and impartial and each side had full opportunity to present the theories and arguments advanced by it.

██ The verdict of the jury was general. No special findings were asked for nor made. The verdict with respect to actual damages was well within the overall proof of plaintiffs and we cannot speculate as to the possibility of mistakes on the part of the jury.

██ We have no reason to believe a new trial would produce a substantially different result. We have often said procedures, in order to warrant reversal, must not only be erroneous but also must be prejudicial; and the burden is upon the appealing litigant to establish prejudicial error. Robertson v. State Highway Commission, Wyo., 450 P.2d 1003, 1004–1005. Without attempting to say the trial in this case was in every respect perfect, it is enough to say we find no prejudicial error sufficient to require a new trial.

The judgment with respect to punitive damages must be and is reversed. The judgment in all other respects, including the award of actual damages, must be and is affirmed.