NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

MATTHEW W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, N.W., *Appellees*.

No. 1 CA-JV 17-0458
FILED 4-26-2018

Appeal from the Superior Court in Maricopa County
No. JD510623
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Denise Lynn Carroll Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

H O W E, Judge:

¶1 Matthew W. ("Father") appeals the juvenile court's order finding that his child, N.W., was dependent based on the mental-health ground. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 While in the Navy in March 2014, Father was admitted to a medical facility. He reported symptoms of paranoia, such as feeling "electricity" running through his body, believing that people were attempting to control his thoughts, thinking that his fiancé was trying to poison him, and experiencing auditory hallucinations. Father's symptoms subsided, however, and he returned to service in May, but was readmitted to the medical facility in July for paranoia, irrational behavior, and "post trauma reaction." He received antipsychotic medication, but discontinued taking it once he left the hospital. Father's mental health continued to deteriorate; he exhibited worsening paranoia, delusions of persecution, threats toward others, and demanded that people call him "the King." He also sent texts that were difficult to comprehend, such as "I am a king, if you follow me you will be free. Do not be afraid. Pass the word." The Navy later discharged Father due to medical and psychological reasons.

¶3 In July 2016, Father pointed a gun at his brother during an argument over a cellphone and charged at police officers with an unloaded gun. Furthermore, Father reportedly laughed and talked to himself and yelled at unseen others. Because of these actions, a physician experienced in psychiatric matters petitioned for court-ordered treatment. The superior court determined that Father suffered from a mental disorder, was persistently or acutely disabled, was in need of treatment, and was either unwilling or unable to undergo voluntary treatment. Thereafter, the superior court ordered him to undergo mental-health treatment for one year.

**¶4** In December 2016, Brittany W. ("Mother")[1] gave birth to N.W., but Father was not aware of Mother's pregnancy or N.W.'s birth. Because Mother admitted that she used methamphetamine during her pregnancy, the Department of Child Safety removed N.W. from Mother's care. Mother informed the Department that Father was potentially N.W.'s father and that he was hospitalized in a Veterans Administration hospital for his post-traumatic stress disorder ("PTSD"). Consequently, the Department alleged that Father was unable to parent N.W. due to neglect and his hospitalization for PTSD. After Father was located in January 2017, he denied the allegations in the petition.

**¶5** The Department referred Father for various reunification services, including paternity testing, a psychological evaluation, parent-aide services, and a urinalysis test to rule out substance abuse. The Department determined that Father was N.W.'s biological father and then placed N.W. with Father's sister. Father began parent-aide services in March, and he had generally good participation in visitation with N.W. and parent-aide services, but during visits he sometimes paced back and forth for a period of anywhere from 20 to 60 minutes.

**¶6** Father received a psychological evaluation in April. The psychologist found that Father had inconsistent goals. The psychologist noted that Father was hypoactive and had tremors, yet wanted a more exciting career, such as being a member of a SWAT team or a sniper in the military. Father also hoped to reenter the Navy or become a contract security officer doing tours overseas, but maintained that he wanted to parent N.W. Ultimately, the psychologist questioned the compatibility of Father's preferred career with parenting a vulnerable infant. The psychologist diagnosed Father with PTSD and unspecified bipolar disorder by history, but was unsure if Father had mood and thought disorder based upon the available information. He recommended that Father participate in visitation, parent-aide services, and therapy for his anxiety. The psychologist opined that he could not determine at that point whether Father would be able to demonstrate minimally adequate parenting skills in the foreseeable future and noted that he needed Father's medical records. The psychologist asked Father about a release of information to obtain Father's medical records, and Father falsely replied that he had already signed one. The psychologist also noted that at the time of the evaluation, Father was not a viable parenting candidate, especially considering his

---

[1] The juvenile court adjudicated N.W. dependent with respect to Mother in December 2016. She is not a party in this appeal.

medical disability, antipsychotic treatment, and his presentation and acknowledgment of anxiety.

¶7 The Department requested Father's medical records, but he repeatedly refused to sign a release of information. In June, the court ordered Father to provide the medical records. Over 400 pages of medical records arrived one week before the August dependency hearing. The records detailed Father's mental-health issues, including his court-ordered treatment, erratic behavior and symptoms of mental illnesses, and his resistance to mental-health treatment. They showed that since 2014, Father has been diagnosed with various mental illnesses, such as bipolar disorder, paranoid schizophrenia, schizoaffective disorder, adjustment disorder with anxiety, and PTSD.

¶8 During the dependency hearing, Father's psychologist testified about Father's mental-health issues, diagnoses, resistance to treatment, and ability to parent. The psychologist testified that he reviewed the recently received medical records and stated that they provided "very strong detailed evidence by multiple evaluators that [Father] had very serious treatment needs and . . . clear documentation of a mental illness." The psychologist also highlighted that Father "showed virtually no insight or virtually no willingness to express much of anything" about his past issues despite his court-ordered treatment having ended recently. He elaborated that individuals with serious mental-health issues, such as Father's, often initially deny their symptoms but their denial lessens after treatment. Because Father continued to refuse to acknowledge his mental-health issues, the psychologist stated that Father had a greater likelihood of regressing. The psychologist ultimately opined that as of the dependency hearing, a child in Father's care would be at high risk. Father objected to the psychologist's testimony, claiming that his testimony had nothing to do with the allegations in the petition; the court overruled the objections. During Father's testimony, he denied suffering from any mental-health issues and minimized the July 2016 altercation with his brother by calling it a "fistfight." He testified that he did not need any mental-health treatment and was adamant that he would not take any antipsychotic medication after his court-ordered treatment had ended.

¶9 The Department moved to amend the petition to conform to the evidence—that Father was unable to parent due to his mental-health issues. The court found that Father had knowledge of the language in the petition, knowledge of his own mental-health treatment and records, and knowledge that the Department needed and requested his medical records to assess Father for reunification services. The court also found that Father

had not demonstrated that he would be unfairly prejudiced by allowing the petition to be amended. The court subsequently granted the Department's motion under Arizona Rules of Procedure for the Juvenile Court ("ARPJC") 55(D)(3) and Arizona Rules of Civil Procedure ("ARCP") 15(b)(1).

**¶10** After the hearing, the court found that N.W. was dependent as to Father under the mental-illness ground but not the neglect ground. As support for its finding, the court highlighted Father's significant mental-health history, his denial of mental-health issues, and the psychologist's testimony, opinions, and recommendations. Father timely appealed.

## DISCUSSION

### 1. Department's Request to Amend Petition

**¶11** Father contends that he was denied the right to a fair trial when the court allowed the Department to amend its petition to include a mental-health allegation. We review a court's grant or denial of a motion to amend a pleading for an abuse of discretion. *Tumacacori Mission Land Dev., Ltd. v. Union Pac. R.R. Co.*, 231 Ariz. 517, 519 ¶ 4 (App. 2013). Because the amended petition did not prejudice Father, no abuse of discretion occurred.

**¶12** ARPJC 55(D)(3) states that an amendment to conform to the evidence shall be made pursuant to ARCP 15(b). ARCP 15(b)(1) provides that if a party objects that the evidence presented at trial was not within the issues raised in the pleadings, the court may permit the opposing party to amend the pleadings. "The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would unfairly prejudice that party's claim or defense on the merits." Ariz. R. Civ. P. 15(b)(1); *Parker v. City of Tucson*, 233 Ariz. 422, 439 ¶ 51 (App. 2013). The rule's purpose is to allow the parties to receive all relief to which they are entitled in one trial and to prevent a multiplicity of suits. *Cont'l Nat'l Bank v. Evans*, 107 Ariz. 378, 381 (1971).

**¶13** Here, the court specifically found that Father had knowledge of (1) the language in the petition, (2) his own mental-health treatment and records, and (3) the Department's multiple requests for those records. Thus, the court found that Father had not demonstrated that he would be unfairly prejudiced by allowing the petition to be amended.

**¶14** Father counters that the amendment was untimely and that he was unfairly surprised or prejudiced by the amendment. He also claims that the amendment put him at a serious disadvantage because he was

prepared to defend only the neglect allegation. Although the original petition did not specifically allege that Father was unable to parent due to mental illness, the petition did state that Father was unable to parent due to his hospitalization for PTSD, which was the only information available to the Department when it filed the petition. This allegation provided notice to Father that the Department had concerns about Father's mental health and wanted to receive more information. Since that time, the Department had repeatedly sought Father's records, which he refused to release until the court ordered him to do so. Based upon the language in the petition, the psychological evaluation, and the Department's repeated requests for Father's medical records, the court did not abuse its discretion by finding that Father did not show that the amendment would unfairly prejudice him. Thus, the court did not abuse its discretion by granting the Department's motion to amend the petition.

## 2. Sufficiency of the Evidence

¶15        Father contends that the Department did not provide sufficient evidence to support the court's finding that N.W. was dependent. "The petitioner's burden of proof in a dependency proceeding is a preponderance of the evidence." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 232 ¶ 2 (App. 2005). Because the juvenile court is in the best position to observe the parties, judge the credibility of witnesses, and resolve disputed facts, this Court will not reweigh the evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009). We will not disturb a dependency adjudication unless no reasonable evidence supports it, and we view the evidence in the light most favorable to sustaining the juvenile court's decision. *Id.* Because sufficient evidence supports the court's dependency finding, it did not err by finding N.W. dependent.

¶16        Here, the record shows that Father suffered from various mental illnesses that required hospitalizations and court-ordered treatment. Because of those illnesses, he has also been dangerous to those around him, as the incidents with his brother and police officers involving guns illustrated. Father's lack of insight about his mental health was also apparent from his having been hospitalized and placed under court-ordered treatment, yet continuing to deny suffering from any mental-health issues and minimizing the altercation with his brother. Furthermore, Father's psychologist opined that, at the time of the dependency hearing, a high risk existed for a child's wellbeing if placed in Father's care. As such, sufficient evidence supports the court's finding that N.W. was dependent due to Father's mental health.

**¶17**     Father counters by highlighting that he had participated in visitation and parent-aide services, had a good relationship with N.W., had stable housing and income, and the case manager and parent-aide services had not observed instances where Father was a danger to N.W. While this evidence supported Father's contention of being a fit parent, the Department also presented evidence casting doubt on his ability to parent. Therefore, Father is arguing that these positive factors outweighed the negative factors. This argument fails because this Court does not reweigh the evidence. *See Jordan C.*, 223 Ariz. at 93 ¶ 18.

**¶18**     Father also relies on *Alma S. v. Dep't of Child Safety*, 1 CA-JV 16-0497, 2017 WL 5413119 (Ariz. App. Nov. 14, 2017) to support his contention that remaining in his care was in N.W.'s best interests. *Alma S.* was a case based upon a severance action and the requirement that a juvenile court must find that terminating a parent's rights is in the child's best interest before making a severance determination. *Id.* at *3 ¶ 12. Here, the court held only a dependency proceeding rather than a severance proceeding or a best-interest finding. As such, *Alma S.* is inapplicable.

## CONCLUSION

**¶19**     For the foregoing reasons, we affirm.

