Neil JORGENSEN, Plaintiff
and Respondent,

v.

JOHN CLAY AND COMPANY, a corporation, and Aetna Casualty and Surety Company, a corporation, Defendants and Appellants.

No. 17621.

Supreme Court of Utah.

March 3, 1983.

Richard L. Stine and Richard Campbell, Ogden, Craig S. Cook, Salt Lake City, for defendants and appellants.

Arthur H. Nielsen, Stephen L. Henriod and Clark R. Nielsen, Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

This is a case of breach of contract for the purchase of sheep from Neil Jorgensen (seller). John Clay and Company (buyer) and Aetna Casualty and Surety Company (buyer's surety) seek a reversal of the judgment entered against them and retrial on the basis of improper venue; or, in the alternative, they seek a remittitur in the amounts of $21,400 awarded for attorneys' fees and $14,822.37 awarded for pre-judgment interest.

Seller, who raises sheep for market, is a resident of Mt. Pleasant, Sanpete County, Utah. For many years he had dealt with the buyer who has its principal place of business in Ogden, Weber County, Utah.

Seller entered into a contract with buyer in November of 1978 for the sale of 5,000 lambs at 65 cents per pound with a "weight stop"[1] of 120 pounds. In early December, seller entered into a second contract in which buyer agreed to purchase 10,000 lambs at 70 cents per pound with no weight stop and had the option to take delivery of them between January and March 15, 1979.

At this time most of seller's sheep were pastured in Blythe, California, although some were in Cedar City, Utah and in Mt. Pleasant, Utah. Shipments from Blythe on the first contract began after Christmas and continued into January of 1979. Shipping dates were agreed upon in advance of each shipment so that seller or his representative could be present to supervise the sorting, loading, and inspection of the lambs. Because bad weather conditions developed in Blythe that winter, seller had to move his lambs in order to save them. Buyer, who was already obligated for shipment, agreed to reimburse seller for moving the 10,000 lambs sold under the second contract to a feedlot in Ault, Colorado. The feedlot is located near Monfort Company of Greeley, Colorado, which is a packing house to whom buyer had resold the lambs.

Even though the custom in the industry and the parties' practice had been to notify the owner prior to the shipment of livestock, buyer selected 2,421 of seller's lambs and shipped them to Monfort from the feedlot on February 5, 6, and 7, 1979 without advising seller. When seller protested, buyer assured him that it would not happen again. However, later in February buyer shipped 1,096 more lambs to Monfort without advising seller. Seller was paid for these but received no weight slips and he claimed they were improperly weighed. Consequently, seller advised the feedlot owner not to release any more of his lambs without notifying him.

At the next scheduled shipment, because bad weather prevented him from flying into Ault, Colorado, seller telephoned to autho-

rize the release of his lambs. He was told that since he was not present, another owner's lambs had been substituted and shipped. Later, two days before another shipment was scheduled, he was informed that buyer would not accept any more of his lambs because buyer claimed that seller had interfered with Monfort's slaughtering schedule. In the interim the market had fallen to 60 cents per pound; and, buyer offered to take the lambs at that price with a weight stop of 120 pounds. Seller gave buyer until March 10 to honor the contract but when buyer's only response was to raise its offer to 63 cents per pound, seller resold 6,238 lambs to R.H. Rock Co. at a loss to him of $166,566.40 which was in addition to the unpaid freight charges of $22,000.00 for shipping from Blythe. Further loss was sustained by seller when buyer eventually paid 5 cents per pound less than agreed upon for 274 lambs which seller had delivered in February.

After filing a claim with buyer's surety, seller brought suit in Sanpete County. Buyer moved to change venue to Weber County but the motion was denied, the trial was conducted, and the jury returned its verdict awarding plaintiff $191,463.40 ($166,566.40 damages on the contract, $22,000.00 for freight from Blythe and 5 cents per pound on the 274 lambs shipped in February) and $1.00 punitive damages. To that verdict the trial court added pre-judgment interest of $14,822.37 and attorneys' fees of $21,400.00.

## VENUE

Buyer moved to change venue to Weber County, its principal place of business, relying upon the following statutory provisions of U.C.A., 1953:

78-13-4. Actions on written contracts.—When the defendant has contracted in writing to perform an obligation in a particular county of the state and resides in another county, an action on such contract obligation may be com-

---

1. A "weight stop" is a device used in the industry which puts a weight limitation on each lamb so that any excess weight is not paid for

by the buyer. It is disapproved by the Packers and Stockyards Administration.

menced and tried in the county where such obligation is to be performed or in which the defendant resides.

78–13–7. All other actions.—In all other cases the action must be tried in the county in which the cause of action arises, or in the county in which any defendant resides at the commencement of the action; provided, that if any such defendant is a corporation, any county in which such corporation has its principal office or place of business shall be deemed the county in which such corporation resides within the meaning of this section. . . .

Since § 78–13–7 applies only where no other provision applies, we need not discuss it here. Buyer cites several cases to support the applicability of § 78–13–4 to this contract. *Simmons v. Hoyt,* 109 Utah 186, 167 P.2d 27 (1946); *Palfreyman v. Trueman,* 105 Utah 463, 142 P.2d 677 (1943); *Floor v. Mitchell,* 86 Utah 203, 41 P.2d 281 (1935); *Atlas Acceptance Corp. v. Pratt,* 85 Utah 352, 39 P.2d 710 (1935); *Buckle v. Ogden Furniture and Carpet Co.,* Utah, 61 Utah 559, 216 P. 684 (1923). In these cases where written contracts to allegedly perform "an obligation in a particular county of this state" had not explicitly or impliedly indicated the place of performance, we resolved the ambiguity in favor of the defendant and held the venue to be at the residence of the defendant, rather than the place of performance. But that principle is not reached here since this case is distinguishable.

■ Unlike the cases cited in the above paragraph, the contract involved here was not one to perform an obligation in a particular county of this state or necessarily within this state at all. Most of the sheep were pastured in California, had to be moved to Colorado and were resold there. Buyer's agents conducted transactions and communications with seller from Colorado and Arizona. It was Colorado where buyer refused to accept further deliveries which it had agreed to take under the contract. This dimension of contract boundaries beyond the territorial limits of Utah is not present in the cases cited and relied upon by the buyer.

Neither does the face of the contract or implications drawn from it indicate that buyer's obligation was to be performed in a particular county of this state. The omission from the contract of a statement of the place of performance as well as the surrounding factual setting of various out-of-state locations for the parties' transactions are considerations which lead to the conclusion that § 78–13–4 does not obtain in this instance.

Even the fact that the parties contracted in light of the Packers and Stockyards Act is not helpful. The applicable provision [2] suggests that Sanpete County might have been the place of performance only if seller had not been present to receive payment at the time of delivery in California or Colorado. The application of the Packers and Stockyards Act provision to the contract as a fallback provision does not create an ambiguity concerning alternative places of performance as buyer argues, either. Its language is quite clear. In short, the application of this provision would not qualify this contract under it.

■ The applicable statute in this instance is the following:

78–13–6. Arising without this state in favor of resident.—All transitory causes of action arising without this state in favor of residents of this state shall, if action is brought thereon in this state, be brought and tried in the county where the plaintiff resides, or in the county where the principal defendant resides, or if the principal defendant is a corpora-

---

**2.** 7 U.S.C. § 228b, Reg. of Sec. of Agriculture, Packers and Stockyards Act, 9 C.F.R., Sec. 201.43(b)(2)(ii) states:

No . . . dealer purchasing livestock for slaughter, shall mail a check in payment for the livestock unless (a) the check is made available for actual delivery and the seller or his duly authorized representative is not present to receive payment, at the point of transfer of possession of such livestock, on or before the close of the next business day following purchase of the livestock and transfer of possession thereof. . . .

tion, then in the county where the plaintiff resides or in the county where such corporation has an office or place of business, subject, however, to a change of venue as provided by law.

There is no dispute that plaintiff sued on a transitory cause of action. It is also clear that this cause of action arose "without this state." Colorado was where buyer took possession of some of the lambs without notice to seller and then later refused to accept further deliveries. Buyer provides no persuasive rationale for his argument that while Colorado was the place of injury, it was not the location where the right of a cause of action arose. Because seller had an option under § 78–13–6 to choose where to bring suit, the district court had no prerogative to change venue to the county of buyer's choice. *Walker Bank & Trust Co. v. Walker,* Utah, 631 P.2d 860 (1981). As a result, there was no error on this point.

### ATTORNEY'S FEES

There was no provision for payment of attorney's fees in this contract. The trial court awarded them as an element of punitive damages because the jury had found malice.

In tort cases where conduct is willful and malicious, we have allowed the award of punitive damages. *Elkington v. Foust,* Utah, 618 P.2d 37 (1980); *Terry v. Zions Co-op Mercantile Inst.,* Utah, 605 P.2d 314 (1979); *Kesler v. Rogers,* Utah, 542 P.2d 354 (1975); *Holdaway v. Hall,* 29 Utah 2d 77, 505 P.2d 295 (1973); *Powers v. Taylor,* 14 Utah 2d 152, 379 P.2d 380 (1963). In a recent repossession case, *Clayton v. Crossroads Equipment Co.,* Utah, 655 P.2d 1125 (1982), we affirmed the award of punitive damages on similar grounds.

Heretofore, we have not approved the award of punitive damages for breach of contract. In *First Security Bank v. Utah Turkey Growers, Inc.,* Utah, 610 P.2d 329 (1980), we held that under the Utah Uniform Commercial Code remedies are applied solely to compensate for actual losses—no punitive awards are permitted. In *Debry & Hilton Travel v. Capitol Intern. Airways,*

Utah, 583 P.2d 1181 (1978), we affirmed the denial of attorney's fees in a breach of contract action where punitive damages were also denied. *Palombi v. D & C Builders,* 22 Utah 2d 297, 452 P.2d 325 (1969), involved faulty workmanship in the performance of a contract for the installation of aluminum siding where we held that punitive damages were not justified but awarded attorney's fees on a statutory basis. In *Dahl v. Prince,* 119 Utah 556, 230 P.2d 328 (1951), we held that an award for attorney's fees as damages against an attaching creditor for depriving plaintiff of possession of an automobile was erroneous. See also *Lyman Grazing Assoc. v. Smith,* 24 Utah 2d 443, 473 P.2d 905 (1970), a contract action where malice was not found and attorney's fees were not awarded.

■ The general rule is that punitive damages cannot be awarded for a breach of contract. *Farris v. U.S. Fidelity and Guaranty Co.,* 284 Or. 453, 587 P.2d 1015 (1978); *Purington v. Sound West,* 173 Mont. 106, 566 P.2d 795 (1977); *Continental Nat. Bank v. Evans,* 107 Ariz. 378, 489 P.2d 15 (1971). See 22 Am.Jur.2d, Damages, § 245 (1965). See also: Restatement of Contracts § 342 (1982); Williston on Contracts § 1340 (Rev. Ed., 1968); Sutherland on Damages, Exemplary Damages, § 391 (4th Ed., 1916).

However, we and other jurisdictions have allowed punitive damages where the breach of contract amounts to an independent tort. *Leigh Furniture and Carpet Co. v. Isom,* Utah, 657 P.2d 293 (1982); *Temmen v. Kent-Brown Chevrolet Co.,* 227 Kan. 45, 605 P.2d 95 (1980); *Jackson v. Glasgow,* Okla. App., 622 P.2d 1088 (1980); *Z.D. Howard Co. v. Cartwright,* Okla., 537 P.2d 345 (1975); *Gonzalez v. Allstate Ins. Co.,* 217 Kan. 262, 535 P.2d 919 (1975); *Dold v. Outrigger Hotel,* 54 Hawaii 18, 501 P.2d 368, 58 A.L.R.3d 360 (1972).

We recognize the rule in some jurisdictions which, rather than requiring an independent tort, allows the award of punitive damages if the contract was breached willfully and maliciously. *Yacht Club Sales & Service, Inc. v. First Nat. Bank,* 101 Idaho 852, 623 P.2d 464 (1980); *State Farm Gen-*

*eral Ins. Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974); *Boise Dodge Inc. v. Clark,* 92 Idaho 902, 453 P.2d 551 (1966). Despite dicta in some cases, we have not and do not adhere to this rule.

 Therefore, while the jury did find malice in the buyer's breach of contract and returned a verdict of $1.00 punitive damages, there was no pleading, argument or evidentiary suggestion that the refusal of the lambs rose to the level of an independent tort. Consequently, the award of punitive damages, and attorney's fees as an element of them, was error in this case; and, attorney's fees were not recoverable on any other ground since there was no contractual or statutory basis for them. *Devore v. Bostrom,* Utah, 632 P.2d 832 (1981); *B & R Supply Co. v. Bringhurst,* 28 Utah 2d 442, 503 P.2d 1216 (1972); *Blake v. Blake,* 17 Utah 2d 369, 412 P.2d 454 (1966).

Accordingly, we order that the award of $1.00 punitive damages and the additional $21,400 attorney's fees awarded as an element of punitive damages be remitted.

### INTEREST

 Prejudgment interest may be awarded in a case where the loss is fixed as of a particular time and the amount of the loss can be calculated with mathematical accuracy. *Anderson v. State Farm Fire and Casualty Co.,* Utah, 583 P.2d 101 (1978); *Bjork v. April Industries, Inc.,* Utah, 560 P.2d 315 (1977); *Uinta Pipeline Corp. v. White Superior Co.,* Utah, 546 P.2d 885 (1976); *Jack B. Parson Construction Co. v. State,* Utah, 552 P.2d 107 (1976).

 Buyer's argument that this is not such a case is unpersuasive. This is not an instance such as a case involving personal injury, false imprisonment, wrongful death, defamation, or the like. Regardless of variability of the weight of the sheep, these damages were mathematically calculated. The jury awarded seller damages based upon the difference between what seller should have received under the contract with buyer and what he actually received from R.H. Rock Company as of the date of last delivery. Seller was entitled to interest on that difference. We find no error on this point.

The judgment below is affirmed except as modified herein. No costs awarded.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.