**Sam H. BENNION, Plaintiff–Appellant,**

v.

**UTEX OIL COMPANY, a Utah corporation, Defendant,**

and

**Shell Western E & P, Inc., a Delaware corporation; Shell Oil Co., a Delaware corporation, Defendants–Appellees.**

No. 87–2206.

United States Court of Appeals, Tenth Circuit.

June 8, 1990.

---

Scott C. Pierce (Peter Stirba, with him, on the briefs) of McKay, Burton & Thurman, Salt Lake City, Utah, for plaintiff-appellant.

David M. Swope (Duane D. Guy also of Shell Oil Co., Houston, Texas, and H. Michael Keller of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, with him, on the brief), for defendants-appellees.

Before LOGAN and EBEL, Circuit Judges, and WEST, District Judge.[*]

LOGAN, Circuit Judge.

Plaintiff Sam H. Bennion, a nonconsenting mineral owner under the Utah Oil and Gas Conservation Act, Utah Code Ann. §§ 40–6–1 to 40–6–18, brought this diversity suit seeking to compel defendants Shell Western E & P, Inc. and Shell Oil Company (collectively "Shell") to pay him his share of the production proceeds from oil and gas wells in which he had an interest. Plaintiff also sought punitive damages for Shell's alleged willful and malicious failure to pay his proportionate share of production. The district court held that plaintiff was not entitled to punitive damages as a matter of law and excluded all evidence on the issue. Plaintiff appeals this ruling.[1] We affirm.

Plaintiff has mineral interests in several oil and gas wells in Duchesne County, Utah, which are now under a forced pooling order. Shell was the operator of one of these wells and processed the oil and gas from the other wells under an agreement with the operator to pay plaintiff his share of the proceeds. Plaintiff never entered a lease, operating agreement, division order, gas processing contract, or any other agreement with respect to the operation of any of the wells. His right to production from the wells, therefore, is governed by the "nonconsenting owner" provisions of Utah Code Ann. § 40–6–6(6) to –6(8).

One of the wells at issue was the subject of an order of the Utah Board of Oil, Gas and Mining (Board) which gave plaintiff a full accounting of his share of production as of July 26, 1979, and gave him a right to receive his share in kind thereafter. The Utah Supreme Court affirmed that order in *Bennion v. Utah State Bd. of Oil, Gas & Mining*, 675 P.2d 1135 (Utah 1983). Thereafter, plaintiff received his in kind share until October 15, 1981, but he stopped paying his proportionate share of operating expenses for the well on February 29, 1980, and he received no other production or proceeds from that well. Shell held plaintiff's share of the proceeds from the other wells pending receipt from plaintiff of a signed division order. These withholdings give rise to plaintiff's claim to punitive damages.

Shell contends that failure to pay a nonconsenting owner his proportionate share of production is akin to breach of a contract, and the settled rule in Utah is that breach of a contract, even if willful and malicious, will not support punitive damages unless the breach also constitutes an independent tort. *See Jorgensen v. John Clay & Co.*, 660 P.2d 229, 232–33 (Utah 1983). Plaintiff, on the other hand, argues that the rights of a nonconsenting owner are more in the nature of property rights, and willful and malicious failure to pay that owner's share constitutes the tort of conversion, which will support punitive damages.

In reality, the rights of a nonconsenting owner are sui generis. *See generally* Kramer, *Compulsory Pooling and Unitization: State Options in Dealing with Uncooperative Owners*, 7 J. Energy L. & Pol'y 255 (1986). The expressed purpose of the Utah Oil and Gas Conservation Act was to displace the common law capture rule, which allowed each owner to remove oil and gas without regard to the effect on a common source of supply underlying surrounding tracts, and replace it with a more cooperative and less wasteful system of production. Utah Code Ann. § 40–6–1; *see generally Bennion*, 675 P.2d at 1137; Dra-

---

[*] The Honorable Lee R. West, United States District Judge for the Western District of Oklahoma, sitting by designation.

1. Before trial, the parties settled on all disputed amounts, except certain operating expenses which Shell sought to charge to plaintiff. The jury rendered a verdict for Shell on this issue, and plaintiff has not appealed anything other than the punitive damages issue.

goo & Storey, *Utah's Oil & Gas Conservation Act of 1983*, 5 J. Energy L. & Pol'y 49, 52–53 (1983); Note, Bennion v. Utah State Board of Oil, Gas & Mining: *Interpreting the Pooling Provisions of Utah's Oil and Gas Conservation Act*, 6 J. Energy L. & Pol'y 219, 219–20 (1985).

The rights of all owners, and especially nonconsenting owners, are defined largely by statute, but the statute does not set forth all of the remedies available to a nonconsenting owner. *See* Utah Code Ann. § 40–6–11(7); *Bennion*, 675 P.2d at 1143–44 (Board can add prejudgment interest to its payment orders). One commentator believes that common law punitive damages for nonpayment should be available to a nonconsenting owner in an appropriate case. *See* Naumann, *The Utah Law of Oil and Gas*, 7 J. Energy L. & Pol'y 191, 226 & n. 205 (1986). Nevertheless, we believe the Utah Supreme Court would not approve punitive damages in this context, absent express legislative approval. Forced to choose between an analogy to tort or contract, we think the Utah Court would analogize to the contract model in part because, in the interest of conservation, the nonconsenting landowner must participate essentially as if he had consented to and fully participated in the drilling operation. *See* Utah Code Ann. § 40–6–6(8). Additionally, the statutory scheme contemplates that most controversies are to be resolved by the Board, which has the power to order payments between the parties. *See Bennion*, 675 P.2d at 1140–41. We note that since 1983 the Board has the power to assess "a penalty of up to 25% of the proceeds and interest at the rate of 1½% per month," presumably payable to the owner, "upon finding that the delay in payment of proceeds was known and intentional." Utah Code Ann. § 40–6–9(7). Although this penalty provision was not in effect throughout the period covered by the current controversy, we believe the Utah Supreme Court would treat it as exclusive in a situation like that before us.

AFFIRMED.