2002 UT 81

**Robert NORMAN, Sr., and Diane Norman, husband and wife, Plaintiffs and Appellants,**

v.

**Mark E. ARNOLD and Norman M. Larson, Defendants and Appellees.**

No. 20010134.

Supreme Court of Utah.

Aug. 6, 2002.

Rehearing Denied Nov. 18, 2002.

J. Stephen Russell, Moab, for plaintiffs.

Matthew L. Lalli, Amy F. Sorenson, Salt Lake City, for defendant Mark E. Arnold.

James C. Haskins, Thomas N. Thompson, Salt Lake City, for defendant Norman M. Larson.

WILKINS, Justice:

¶ 1 Plaintiffs appeal the dismissal of their amended complaint and the denial of their

motion for leave to file a second amended complaint. The district court dismissed the amended complaint after granting summary judgment in favor of defendants Arnold and Larson, and after denying plaintiffs leave to file a second amended complaint. With respect to the grant of summary judgment and the dismissal of the amended complaint, we affirm in part and reverse in part. With respect to the denial of leave to file a second amended complaint, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *E.g.*, *Arredondo v. Avis Rent A Car Sys.*, 2001 UT 29, ¶ 2, 24 P.3d 928. We recite the facts accordingly.

¶ 3 On March 15, 1995, several individuals executed a joint venture agreement, the Moab Land Development Joint Venture Agreement, and agreed to construct, manage, and maintain a Holiday Inn in Moab, Utah. The original members and signatories to the joint venture agreement were Plaintiffs Robert and Diane Norman and three members of 4–D development: Duane Barney, Peter Lanto, and Greg Page.[1] The Normans were to contribute the land on which the hotel was to be built, Page was to arrange for financing of the project, Lanto was to oversee construction, and Barney was to manage the hotel once it was completed.

¶ 4 Defendant Norman Larson was retained, either as an individual, or as the owner of Western Empire Advisors ("WEA"), to assist the group in obtaining financing. Defendant Mark Arnold, an attorney, was contacted by Larson and retained as legal counsel for the group. In an affidavit Arnold indicated he "performed various tasks for the joint venture," and in deposition he testified that he understood that he represented the joint venture members, "Diane Norman, Bob Norman, Greg Page, Duane

Barney, [and] Pete Lanto," as a "group," but not individually.

¶ 5 Larson obtained a Holiday Inn franchise for the Moab area in June 1995. In an effort to assist the group with short-term financing, Arnold introduced the group to Ann and Norman Young. The Youngs agreed to loan the joint venture $160,000 at 18% interest, due in 90 days, with loan fees totaling twelve points. In return, Larson and the five members of the group—Robert Norman, Diane Norman, Page, Barney, and Lanto—signed a promissory note in favor of the Youngs. Further, the Normans agreed to pledge the property they contributed to the joint venture as collateral for the loan and signed a deed of trust in the Youngs' favor.

¶ 6 In October 1995, Lanto sold his interest in the joint venture to Arnold and WEA, Larson's entity. Arnold and WEA bought from Lanto "all interest whatsoever Seller may own in two Holiday Inn ventures located in Moab, Utah, and Park City, Utah," for $8,500.

¶ 7 Eventually, Page and Larson failed to obtain permanent financing. The 90 day Young note came due. Arnold persuaded the Youngs to extend the promissory note several times and not foreclose on the Normans' land. In further efforts to avoid foreclosure, Arnold introduced the Normans to Jim Winkler, who purchased the land from the Normans. The Young note was satisfied from the proceeds of the sale of the Normans' land, and the Youngs released the trust deed.

 ¶ 8 The Normans filed suit against Arnold, Larson, Barney, Lanto, Rasmussen, and Page in September 1998. Eventually an amended complaint was filed in November 1999. The amended complaint named only Arnold and Larson as defendants and articulated four causes of action: (1) breach of the joint venture agreement by both Arnold and Larson; (2) default of the trust deed note by Arnold and Larson, claiming they were jointly and severally liable to the Normans; (3)

---

1. Eric Rasmussen signed the joint venture agreement, but the parties do not dispute that he signed for Page, whom the parties recognize as the real joint venture member.

breach of fiduciary duty by Arnold; and (4) punitive damages.[2]

¶ 9 Arnold moved for partial summary judgment claiming that (1) he could not have breached the joint venture agreement because he never signed the written agreement or assented to its terms, (2) he owed no fiduciary duties to the Normans because he was not their personal lawyer, and (3) he could not be liable for punitive damages because the remaining "default of trust deed" claim sounded in contract.

¶ 10 The district court granted partial summary judgment in favor of Arnold, dismissing the claims for breach of fiduciary duty and punitive damages against him. The district court held that Arnold did not breach any fiduciary duties, dismissing the only tort claim against him. Consequently, because only contract claims remained, the district court also dismissed the punitive damages request.

¶ 11 The matter proceeded to trial, but a mistrial resulted on August 28, 2000, and the trial was rescheduled for January 2001. Three days after the mistrial, on September 1, 2000, the Normans requested leave to file a second amended complaint. The district court denied this motion.

¶ 12 Subsequently, the three parties each requested partial summary judgment in their favor. Larson moved for partial summary judgment claiming (1) he could not have breached the joint venture agreement because he was not a party to it and (2) he owed nothing to the Normans for defaulting on the Young trust deed note. The Normans moved for partial summary judgment, contending that Arnold and Larson were jointly and severally liable to them on the trust deed note as a matter of law. Arnold moved for partial summary judgment on the two causes of action that remained against him: (1) breach of the joint venture agreement and (2) default on the trust deed note as a jointly and severally liable co-obligor.

¶ 13 The district court granted Larson's and Arnold's motions for summary judgment and denied the Normans' motion, dismissing plaintiffs' claims for breach of the joint venture agreement because Arnold and Larson were not parties to the March 15, 1995 joint venture agreement, and dismissing plaintiffs' default of trust deed claim against both Arnold and Larson because Arnold was not an obligor on the note and any obligation Larson had on the trust deed note was to the Youngs, not the Normans.

¶ 14 This appeal followed.

## ANALYSIS

### I. STANDARD OF REVIEW

■ ¶ 15 Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Utah R. Civ. P. 56(c); *see also, e.g., Greene v. Utah Transit Auth.*, 2001 UT 109, ¶ 10, 37 P.3d 1156. We give a district court's decision to grant summary judgment no deference and review it for correctness. *E.g., Greene*, 2001 UT 109 at ¶ 10, 37 P.3d 1156.

### II. BREACH OF FIDUCIARY DUTIES BY ARNOLD

■ ¶ 16 The district court held, as a matter of law, that Arnold, as a result of representing the group, did not owe, and therefore could not breach, any fiduciary duties to the Normans. On appeal, the Normans claim Arnold owed them fiduciary duties because an implied attorney-client relationship was created by the fact that Arnold represented the group, of which the Normans were members. Arnold counters that he could not owe the Normans any fiduciary duties because the Normans admitted in deposition that they recognized Arnold represented the group, not their individual interests; and the Normans retained another lawyer to represent them individually. We hold that the district court erred in granting summary judgment on this issue by concluding as a matter of law that Arnold did not breach any fiduciary duties owed to the Normans.

■ ¶ 17 Arnold would owe fiduciary duties to the Normans if an implied attorney-client relationship existed between him and the Normans. In *Kilpatrick v. Wiley, Rein*

2. While the Normans pleaded punitive damages as a separate cause of action, we note that punitive damages cannot be pleaded as an independent cause of action. As a remedy, it must be requested in conjunction with a cognizable cause of action.

*& Fielding,* we clarified the standard for determining whether an implied attorney-client relationship exists. We said, "the proper determination of whether an implied attorney-client relationship exists hinges on whether the party had a reasonable belief that it was represented." 2001 UT 107, ¶ 40, 37 P.3d 1130. We then construed *Margulies v. Upchurch,* 696 P.2d 1195 (Utah 1985), and explained that *Margulies* recognized that under certain circumstances, an implied attorney-client relationship may arise when the individual members of a limited partnership reasonably believe they are represented in their individual capacities by the limited partnership's legal counsel. *Kilpatrick,* 2001 UT 107 at ¶ 47, 37 P.3d 1130 (citing *Margulies,* 696 P.2d at 1200–01). We then clarified that "*Margulies* did not . . . create two separate tests to determine whether an implied attorney-client relationship exists." *Id.* at ¶ 49. "*Margulies* adopted only one test to determine whether an implied attorney-client relationship exists, i.e., whether the individual limited partners reasonably believed that the limited partnership's legal counsel represented their interests," which is resolved by looking at the totality of the circumstances surrounding the legal representation. *Id.* In the instant case, therefore, the test is whether, under the totality of the circumstances, the Normans reasonably believed that Arnold, the lawyer for the group, represented their interests as individuals as distinguished from their common interests with the other limited partners.[3]

¶ 18 The record facts both discredit and support a conclusion that an implied attorney-client relationship existed between Arnold and the Normans. The Normans testified in deposition that they never hired Arnold to represent their individual interests, and, arguably, they recognized that Arnold did not represent their individual interests because they hired separate legal counsel to represent them individually. Other evidence in the record, however, indicates that Arnold's representation of the Normans was not merely incidental to his representation of the joint venture. For

example, the record reveals that Arnold first persuaded a creditor not to foreclose on the Normans' land and later introduced the Normans to the third party who purchased the land. Because this conflicting evidence creates a genuine issue of fact as to whether Arnold represented the Normans in their individual capacities, this question must be determined by a finder of fact, and in this case, the Normans made a jury request. Because this question is properly answered by a factfinder, it was error for the district court to determine, as a matter of law, that Arnold did not owe the Normans any fiduciary duties.

¶ 19 We therefore reverse the district court on this issue, and we remand for a factual determination whether, under the totality of the circumstances, the Normans reasonably believed that Arnold represented their interests, and for further proceedings consistent with this opinion.

## III. BREACH OF THE JOINT VENTURE AGREEMENT BY ARNOLD AND LARSON

 ¶ 20 The district court held, as a matter of law, that Arnold and Larson did not breach the joint venture agreement, and granted summary judgment in their favor on this issue. On appeal, the Normans maintain that Arnold and Larson breached the joint venture agreement. The Normans insist there are sufficient facts, particularly Arnold and Larson's involvement in controlling the assets of the joint venture, to conclude that Arnold and Larson were members of the joint venture. They further claim that Arnold and Larson became joint venture partners when they acquired the interests of Peter Lanto, which included his liability to the joint venture. Arnold avers that summary judgment was proper because he was not a signatory to the March 1995 joint venture agreement and therefore could not have breached the agreement. Arnold further argues that he was not bound by the agreement upon becoming involved with the joint

---

**3.** The test appropriately places a burden upon the lawyer to clarify, for the individual members of an entity represented by the lawyer, the relationship and duties owed by the lawyer to the entity and the relationship and duties, or lack thereof, owed to individual members of the entity. *See* Utah R. of Prof'l Conduct 1.13(d)-(e) & cmt. "Clarifying the Lawyer's Role" (2002).

venture months after the agreement was signed, and, in any event, he was never accepted as a joint venture partner by the group members by unanimous consent as required by the joint venture agreement. Larson also maintains that summary judgment on this issue was properly granted because he, too, was not a party to the joint venture agreement and therefore could not have breached it. He was neither a joint venture partner at inception, nor was he added as a member later by unanimous consent. Further, Larson claims, WEA, not he, bought Lanto's interest, and WEA was not named as a party in this lawsuit and cannot be deemed the alter ego of Larson without the Normans pleading alter ego. We hold, for the reasons that follow, that the district court correctly ruled, as a matter of law, that Arnold and Larson did not breach the joint venture agreement.[4]

■ ¶ 21 First, neither Arnold nor Larson was a party to the written March 1995 joint venture agreement. Therefore, they cannot be liable to the Normans for breach of contract based upon the March 1995 contract.

■ ¶ 22 The Normans further argue, however, that simply because Arnold and Larson were not parties to the written agreement does not mean that there was no business arrangement or agreement. The Normans contend that the arrangement or agreement between the group and Arnold and Larson was a joint venture. They claim Arnold and Larson became members of the joint venture because they participated in advising and working on behalf of the joint venture. The Normans also insist Arnold and Larson became joint venture partners when they bought Lanto's interest in the joint venture, as Lanto was a signatory to the March 1995 joint venture agreement.

■ ¶ 23 We disagree. Based on the record evidence, Arnold and Larson never became members of the joint venture based upon their participation with the joint venture. The March 1995 joint venture agreement governs the relationship between the members of the joint venture, and, pursuant to that agreement, new members could not be added to the joint venture except upon unanimous consent of the original joint venture members.[5] The Normans presented no record evidence demonstrating that the remaining joint venture members unanimously agreed to allow Arnold and Larson to become joint venture members. To overcome summary judgment, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Utah R. Civ. P. 56(e). "If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Id.; see also, e.g., Grand County v. Rogers,* 2002 UT 25, ¶ 21, 44 P.3d 734. To the contrary, in fact, is the deposition testimony of the Normans, two of the original five members of the joint venture. In deposition, Robert Norman testified that he never consented to any individual joining the joint venture other than the original members. Larson also testified that he "never became a part of the joint venture because [he] was unable to obtain financing." Diane Norman also testified that she never consented to Mark Arnold becoming a partner. Therefore, given this record evidence and the lack of any evidence to the contrary,

---

4. In addition to this argument, the Normans' brief contends that Arnold and Larson should be estopped from claiming they were not joint venture partners because of the extent of their involvement with the joint venture and because they bought Peter Lanto's interest in the joint venture. Arnold argues that this equitable estoppel argument was not argued to the district court and was therefore not preserved for appeal; Larson claims there is no basis for an equitable estoppel claim. The Normans have not demonstrated, nor has our independent review of the record discovered, where estoppel was argued to the district court. The theory was not presented, nor was any legal authority in support of the theory cited, in the Normans' motion for partial summary judgment or in the Normans' oppositions to Arnold's and Larson's motions for summary judgment. Accordingly, the Normans' estoppel theory is not properly before this court. *See, e.g., Spears v. Warr,* 2002 UT 24, ¶ 11, 44 P.3d 742; *Badger v. Brooklyn Canal Co.,* 966 P.2d 844, 847 (Utah 1998).

5. Section 1.7 of the written joint venture agreement expressly states, "Additional Joint Venturers may be added to the Joint Venture at any time upon agreement of all of the then existing Joint Venturers."

Arnold and Larson could not have become joint venturers through their involvement in advising and managing the activities of the joint venture.

¶ 24 Further, Arnold and Larson cannot be liable for breach of the joint venture agreement by virtue of buying Lanto's interest in the joint venture. The Utah Partnership Act "governs the property and transfer rights of joint ventures." Utah Code Ann. § 48–1–3.1(2) (1998). Section 48–1–24 of the Act states that "[a] conveyance by a partner [or joint venturer] of his [or her] interest in the partnership [or joint venture] does not ... in the absence of agreement, entitle the assignee during the continuance of the partnership [or joint venture] to interfere in the management or administration of the partnership [or joint venture] business ... but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner [or joint venturer] would otherwise be entitled." § 48–1–24. Therefore, when Arnold and Larson bought Lanto's interest in the joint venture, they did not step into his shoes and become members of the joint venture. In acquiring Lanto's interest, Arnold and Larson merely acquired the right to receive the profits to which Lanto was entitled in accordance with the March 1995 joint venture agreement. Thus, because Arnold and Larson did not become members of the joint venture in buying Lanto's interest, they cannot be liable for breach of the joint venture agreement in this manner.

¶ 25 Finally, WEA, not Larson, acquired Lanto's interest, and the Normans did not adequately plead or factually support WEA as an alter ego for Larson. Because the Normans failed to adequately plead and present sufficient evidence to factually demonstrate how they are entitled to reach Larson's personal assets beyond WEA's assets, summary judgment on this issue was appropriate.

¶ 26 Consequently, the district court's grant of summary judgment on the Normans' claims against Arnold and Larson for breach of the joint venture agreement was proper.

## IV. LIABILITY ON THE YOUNG NOTE

¶ 27 The district court granted summary judgment in favor of Arnold and Larson on the Norman's claim based on default of the Young note, concluding that Arnold "was not at any time an obligor on the trust deed note and thus owed no duty with respect to any alleged default of the note," and concluding that as to Larson, "while he was an obligor on the trust deed note, any duty he undertook with respect to that note ran only to persons who are not parties herein, and he had no duty to the Plaintiffs with respect to that note." On appeal, the Normans reason that Arnold and Larson should be held responsible for their proportionate share of the liability as signatories on the note signed in favor of the Youngs. They insist Larson is liable to the Normans as a co-obligor on the note as the note expressly states that signatories are jointly and severally liable. Arnold asserts that he owes no duty to the Normans on the Young note. He further asserts that even though he agreed to indemnify Lanto for any liability Lanto had on the note when he bought Lanto's interest in the joint venture, the indemnification obligation to Lanto is different from a payment obligation to the Normans. Larson argues that summary judgment in his favor was proper because the Normans failed to identify a cognizable legal theory upon which Larson could be liable. He insists the Normans were co-obligors on the note, not beneficiaries, and while the Normans mention contribution in their appellate brief, they provide no legal authority, and contribution as a theory was not raised in the amended complaint.

### A. No Error in Granting Summary Judgment in Favor of Arnold

¶ 28 The district court did not err in granting summary judgment on this issue in favor of Arnold. Arnold is not liable to the Normans on the trust deed note signed in favor of the Youngs because he never signed the note. He was not a signatory on the note and therefore has no liability to anyone based on the note.

¶ 29 The Normans acknowledge in their amended complaint that Arnold never signed the trust deed note, but they never-

theless contend that Arnold acquired the obligations of Lanto, who did sign the note, and the note expressly provides for joint and several liability of the signatories. This argument is unavailing. As noted above, the Utah Partnership Act "governs the property and transfer rights of joint ventures," Utah Code Ann. § 48-1-3.1(2) (1998); and section 48-1-24 of the Act states that "[a] conveyance by a partner [or joint venturer] of his [or her] interest in the partnership [or joint venture] does not ... in the absence of agreement, entitle the assignee during the continuance of the partnership [or joint venture] to interfere in the management or administration of the partnership [or joint venture] business ... but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner [or joint venturer] would otherwise be entitled." § 48-1-24. Therefore, when Arnold and Larson bought Lanto's interest, they merely acquired the right to receive the profits Lanto was entitled to in accordance with the March 1995 joint venture agreement. They did not become co-obligors on the note. Lanto retained the liabilities of co-obligor. Even assuming, as Arnold does, that Arnold and Larson agreed to indemnify Lanto for any obligation Lanto may have on the note,[6] Arnold would not owe any obligation to the Normans based on the note; Arnold's obligation to indemnify based upon his agreement with Lanto would run to Lanto. Consequently, summary judgment in favor of Arnold on the Normans' claim for liability on the Young note was proper.

## B. Error in Granting Summary Judgment in Favor of Larson

¶ 30 The district court erred in granting summary judgment in favor of Lar-

son on the Normans' claim on the Young note. Larson was a signatory to the Young note, as were the Normans. Because Larson and the Normans agreed in the note that they "jointly and severally" promised to pay the Youngs, the Normans have a contribution claim against Larson.

¶ 31 Problematic is the fact that this claim was inartfully pleaded. Further, on appeal the Normans cite no legal authority in support of their argument which makes it difficult to ascertain their theory of recovery. The Normans' brief does argue, however, that Larson should be "proportionately responsible" for losses incurred by the Normans under the Young note, and they state that they "are entitled to contribution from the co-obligors" at the end of their argument on this point.

¶ 32 Essential, however, is the fact that, while inartfully pleaded and argued, the Normans adequately presented this issue to the district court. In their complaint, the Normans allege that, by the terms of the note, Larson is jointly and severally liable to the Normans in the event of default on the note. In their opposition to Larson's motion for summary judgment, the Normans argued that Larson signed the note as an obligor, and they claim that he is "liable for ⅙ of the loss incurred by the Normans by retiring the note ($42,000) as a matter of law."

¶ 33 The district court thus erred in concluding, as a matter of law, that Larson was not liable to the Normans based on the Young note. Accordingly, we reverse the district court's decision on this issue and remand for further proceedings consistent with this opinion.[7]

---

6. Arnold states in his brief that he and Larson "purported to indemnify Lanto for any liability he may have under the note." The purchase agreement, however, states simply that "Purchaser [Arnold and WEA] agrees to hold Seller harmless from any and all claims arising out of the development of the [Holiday Inn ventures in Moab and Park City, Utah,] including but not limited to tort claims and claims on any notes for moneys previously borrowed totaling $160,000."

7. We note here, for the benefit of the district court on remand, that while the Normans insist

that Larson is "liable for ⅙ of the loss incurred by the Normans by retiring the note," six individuals signed the promissory note: Larson, Robert Norman, Diane Norman, Barney, Lanto, and Page.

We further note that whether the Normans should be individually compensated as a result of the land sale is also at issue. The record does not appear to indicate whether the Normans' land was contributed to the joint venture or whether they retained it personally. Thus, arguably the joint venture, not the Normans, may have owned the property.

## V. PUNITIVE DAMAGES

¶ 34 The district court dismissed the Normans' claim for punitive damages against both Arnold and Larson because, having dismissed the tort claim of breach of fiduciary duty alleged against Arnold, "plaintiffs' remaining claims [were] based upon breach of contract theories for which a punitive damage claim is unavailable," and the only claims against Larson also sounded in contract. On appeal, the Normans argue the punitive damages claim should not have been dismissed because, they claim, they were deceived into pledging their property. Arnold asserts that the district court did not abuse its discretion in dismissing the punitive damages claim because, after the breach of fiduciary duty claim was dismissed, the remaining claims were contractual. Larson insists that the only claims alleged against him sounded in contract; there was no tort claim against him to which punitive damages could have attached.

### A. Punitive Damages as to Arnold

 ¶ 35 Because the claim for breach of fiduciary duty was improperly dismissed, and therefore reinstated, the Normans' request for punitive damages against Arnold is also reinstated. "The general rule is that punitive damages cannot be awarded for a breach of contract." *Jorgensen v. John Clay & Co.*, 660 P.2d 229, 232 (Utah 1983) (citations omitted). Punitive damages are, however, allowed "where the breach of contract amounts to an independent tort." *Id.* (citations omitted). In Utah, a claim for breach of fiduciary duty is an independent tort that, on occasion, arises from a contractual duty, and can serve as the basis for punitive damages. *See Campbell v. State Farm Mut. Auto. Ins. Co.*, 2001 UT 89, ¶¶ 46–47, —— P.3d ——. Therefore, even though punitive damages were inappropriately pleaded as an independent cause of action, because the claim for breach of fiduciary duty is reinstated, punitive damages can be awarded as a remedy based upon this claim. Thus, the district court erred in dismissing the request for punitive damages as to Arnold.

### B. Punitive Damages as to Larson

 ¶ 36 The claim for punitive damages against Larson, on the other hand, was appropriately dismissed. Again, punitive damages cannot be awarded for a breach of contract unless the breach amounts to an independent tort. *Jorgensen*, 660 P.2d at 232. The claims pleaded against Larson, breach of the joint venture agreement and default on the trust deed note, sound in contract. Accordingly, we affirm the dismissal of the punitive damages as to Larson.

## VI. MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

 ¶ 37 The district court denied the Normans' motion for leave to file a second amended complaint. On appeal, the Normans argue that in doing so, the district court abused its discretion. The Normans point out that Utah Rule of Civil Procedure 15 provides that "leave [to file an amended complaint] shall be freely given," and allege abuse of discretion because defendants would have had ample time to prepare for trial on the proposed second amended complaint because a mistrial was declared. They further claim that no new evidence was necessary to argue the proposed new claims, and thus no additional discovery would have been required. Arnold and Larson counter that the district court did not abuse its discretion. Arnold argues that the Normans' request for leave was untimely because the motion was filed after the first day of trial, and rule 15 is applied less liberally when leave to amend is requested during or after trial. Larson also claims that the liberality of rule 15 can be lost when the opposing party lacks sufficient opportunity to respond to the amended pleadings, and he insists that because the Normans sought leave to amend after the time for discovery had ended, the request was untimely and prejudicial. Larson further claims that the record does not contain a proffered second amended complaint and therefore the court has nothing to review. We hold that the district court did not abuse its discretion in denying the Normans' motion.

 ¶ 38 Whether to grant leave to amend is left to the sound discretion of the district court. *E.g., Aurora Credit Servs., Inc. v. Liberty West Dev., Inc.*, 970 P.2d 1273, 1281 (Utah 1998); *Westley v. Farmer's*

*Ins. Exch.,* 663 P.2d 93, 94 (Utah 1983). We will not disturb a decision regarding leave to amend absent an abuse of discretion resulting in prejudice to the complaining party. *E.g., Girard v. Appleby,* 660 P.2d 245, 248 (Utah 1983).

¶ 39 "Rule 15(a) of the Utah Rules of Civil Procedure provides that after a responsive pleading has been served, 'a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'" *Holmes Dev., LLC v. Cook,* 2002 UT 38, ¶ 57, 48 P.3d 895 (quoting Utah R. Civ. P. 15(a)). This liberality is limited, however, "when the amendments are proposed during or after trial, rather than before trial," *Girard,* 660 P.2d at 248, or when "the opposing side would be put to unavoidable prejudice by having an issue adjudicated for which he had not had time to prepare," *Bekins Bar V Ranch v. Huth,* 664 P.2d 455, 464 (Utah 1983).

¶ 40 In this case, jury selection took place and a mistrial was declared on August 28, 2000, because a potential juror failed to disclose a felony conviction. A new trial date was scheduled for January 16–19, 2001, four months later. On September 1, 2000, the Normans filed their motion for leave to file a second amended complaint. Arguably the Normans' motion was untimely. The parties had already prepared for trial and, but for the mistrial, would have tried the case. New claims against Arnold and Larson should have been added previously. Plus, had leave to amend been granted, it would have been necessary to reopen discovery. The Normans claim that no new discovery was necessary, but four of the five proposed new claims named new defendants, which likely would have required new discovery. The new defendants had not been deposed, nor had they been involved in the already-conducted discovery. Arguably discovery could have been reopened, but the parties had already prepared for trial, a new trial date was scheduled for four months hence, and the Normans' claims against the new defendants could be brought in a separate action. Given these circumstances, we cannot say that the district court abused its discretion in denying the Normans leave to file a second amended complaint.

## CONCLUSION

¶ 41 Accordingly, for the reasons outlined above, we affirm in part and reverse in part. The district court's dismissal of plaintiffs' claim for breach of fiduciary duty against defendant Arnold is reversed. The district court's dismissal of the claims for breach of the joint venture agreement against both Arnold and Larson is affirmed. The district court's dismissal of the claims of default on the trust deed note is affirmed as to Arnold, but reversed as to Larson. The district court's dismissal of the request for punitive damages is reversed as to Arnold and affirmed as to Larson.

¶ 42 Thus, two of plaintiffs' claims are reinstated: (1) the claim for breach of fiduciary duty against defendant Arnold, and the accompanying request for punitive damages, and (2) the claim for contribution on the Young note, the Normans' "Default of Trust Deed Note" claim, against Larson.

¶ 43 The case is remanded for further proceedings consistent with this opinion.

¶ 44 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice HOWE, and Justice RUSSON, concur in Justice WILKINS' opinion.