*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 36**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

GREGORY & SWAPP, PLLC,
and ERIK HIGHBERG,
*Appellants and Cross-Appellees,*

*v.*

JODI KRANENDONK,
*Appellee and Cross-Appellant.*

No. 20160377
Filed July 26, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Royal I. Hansen
No. 100923050

Attorneys:

Gregory J. Sanders, Clemens A. Landau, Patrick C. Burt,
Michael D. Zimmerman, Troy L. Booher, Salt Lake City,
for appellants and cross-appellees

Shaun L. Peck, John D. Luthy, Brandon J. Baxter,
Matthew David Lorz, Logan, for appellee and cross-appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PEARCE,
JUSTICE PETERSEN, and JUDGE MORTENSEN joined.

Having recused himself, JUSTICE HIMONAS did not participate
herein; COURT OF APPEALS JUDGE DAVID N. MORTENSEN sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1 Erik Highberg, a personal injury attorney for Gregory &
Swapp, PLLC, failed to bring a claim against two truck drivers who
severely injured Mr. Highberg's client, Jodi Kranendonk, before the

statute of limitations ran on Ms. Kranendonk's claim. Mr. Highberg then failed to disclose to Ms. Kranendonk for ten months the fact that he missed the statute of limitations. During that time, he sought other legal avenues to correct his mistake. Ms. Kranendonk ultimately sued Mr. Highberg and Gregory & Swapp (collectively, the Swapp Defendants) for legal malpractice, breach of contract, breach of fiduciary duty, and negligent hiring, training, and supervision.

¶2　At trial, Mr. Highberg testified that he withheld information from Ms. Kranendonk because he wanted to protect her from stress and worry. In response to this testimony, she sought to admit two statements in which he had written that she was becoming "a pain [in] the ass" and was "a moron." The district court refused, under rule 403 of the Utah Rules of Evidence, to admit these statements and the trial went forward.

¶3　The four claims ultimately went to a jury, which found in favor of Ms. Kranendonk on each. The jury first awarded her $750,000, the amount the jurors believed she would have received if Mr. Highberg had timely brought her personal injury claim against the truck drivers. The jury also awarded her $2.75 million for non-economic damages, i.e., emotional distress she sustained as the result of Mr. Highberg's malpractice in this case. This second award did not relate in any way to the emotional distress she sustained from the original personal injury. The jury did not award punitive damages.

¶4　After the jury's decision, Ms. Kranendonk moved for attorney fees and litigation expenses on the ground that the Swapp Defendants had breached their fiduciary duties. The district court awarded her $1,166,666.67 in attorney fees—the amount she owed under her contingency fee agreement—but did not award her litigation expenses.

¶5　After trial, the Swapp Defendants moved for judgment notwithstanding the verdict on the jury's second award of $2.75 million, arguing that non-economic damages unrelated to the original personal injury claim should not be awarded in this instance. The district court denied their motion.

¶6　The Swapp Defendants challenge this decision on appeal. Specifically, they argue that this case does not qualify as one of the "rare" cases where non-economic damages can be recovered for breach of contract, because emotional distress was not a foreseeable result of a breach in this case and was not explicitly contemplated by the parties when they formed their agreement. They also argue that

the non-economic damage award cannot be supported under a breach of fiduciary claim, because there is insufficient evidence to establish an actionable breach of fiduciary duty. We agree with both arguments and so vacate the jury's $2.75 million award for non-economic damages.

¶7 We also vacate the court's attorney fees award because Ms. Kranendonk's breach of fiduciary duty claim failed and this was the only claim that could support this award. And, for the same reason, we hold that the district court correctly denied her litigation expenses.

¶8 Lastly, Ms. Kranendonk challenges the district court's decision to exclude Mr. Highberg's two written statements—statements she argues are necessary to support her prayer for punitive damages. But because she fails on her breach of fiduciary claim, punitive damages cannot be awarded in this case. Any decision we could render on this issue therefore would be meaningless and so we hold that this issue is moot.

## Background

¶9 On June 19, 2006, Jodi Kranendonk suffered severe injuries when two semi-trucks collided with her car outside of Portland, Oregon. She retained Gregory & Swapp, PLLC dba Craig Swapp & Associates and Erik Highberg to bring a negligence action against the truckers. Mr. Highberg filed a complaint in Oregon, but failed to properly serve the truckers within sixty days, as required under Oregon law. A year later, in June 2008, he filed the complaint a second time and again failed to timely serve the truckers. But this time his failure was fatal—the statute of limitations had run on the claim. Ms. Kranendonk's negligence claims against the truckers were subsequently dismissed with prejudice.

¶10 After realizing that Ms. Kranendonk's claim was time-barred, and in an attempt to fix his error in missing the limitation deadline, Mr. Highberg moved in an Oregon state court for an extension of time to serve the truckers, which was denied in November 2008. He filed an appeal of his denial in February 2009, which failed. During this ten-month period, Mr. Highberg failed to disclose to Ms. Kranendonk, despite having multiple conversations with her about her case, that her claim was now time-barred. Finally, in May or June of 2009, he revealed to her that he had failed to bring a valid action within the applicable statute of limitations and that she could no longer bring a successful personal injury claim against the truckers.

¶11 Ms. Kranendonk was "devastated" at the news. As Mr. Highberg was aware, she was a "very anxious person" and the news was catastrophic to her. She retained a new law firm that filed legal malpractice claims against the Swapp Defendants on her behalf. Her complaint alleged claims of legal malpractice, breach of contract, breach of fiduciary duty, fraudulent non-disclosure, and negligent hiring, training, and supervision.[1] Ms. Kranendonk also sought punitive damages. The case went to trial in 2015.

¶12 At a pre-trial hearing, Ms. Kranendonk unsuccessfully attempted to bring in two statements Mr. Highberg had written describing his interaction with her. The first indicated that he felt she was becoming "a pain [in] the ass," and the second showed that he believed she was "a moron." The district court kept out these statements under rule 403 of the Utah Rules of Evidence. At trial, Mr. Highberg testified that he did not disclose to Ms. Kranendonk the fact that the statute of limitations had run on her claim, because he cared for her and did not want to cause her more stress. In response to this testimony, Ms. Kranendonk moved to introduce the two statements to show that Mr. Highberg's actions were not motivated by his solicitude for her well-being, but rather that he harbored ill will toward her. The district court rejected this motion, stating that the two statements were "not directly on point" and "hardly suggest that he was acting against her interest intentionally" or "that he didn't care about her."

¶13 When the trial concluded, the district court provided the jury with instructions regarding each of the five claims brought by Ms. Kranendonk. Importantly, the court instructed the jury that the conduct required to establish her legal malpractice claim was not the same as the conduct required to establish her breach of fiduciary duty claim. The court defined legal malpractice as failing "to use the same degree of care, skill, judgment and diligence used by reasonably careful attorneys under similar circumstances." But the court instructed the jury that it need not determine whether the Swapp Defendants committed legal malpractice because it "ha[d] found the [Swapp Defendants] negligently performed legal services." Accordingly, the jury was only asked to determine

---

[1] Ms. Kranendonk also alleged a fraud claim but later withdrew this claim at trial.

whether the Swapp Defendants' legal malpractice "was a cause of harm to [Ms.] Kranendonk."

¶14 The jury was asked, however, to determine whether the Swapp Defendants had breached their fiduciary duties in this case. The court then set forth the conduct that would constitute a breach of fiduciary duty. It explained that in order for Ms. Kranendonk to prevail on this claim she must show that the Swapp Defendants "conceal[ed] important facts or law from [her]; . . . deceiv[ed] [her]; . . . plac[ed] their own interests ahead of the interests of [her] by failing to inform [her] of a conflict of interest created by the [Swapp Defendants'] acts or omissions;" or "fail[ed] to advise [her] to seek competent counsel after a conflict of interest arose between the [Swapp Defendants] and [her]." The court also stated that Ms. Kranendonk must prove that "[t]he acts or omissions of the [Swapp Defendants] were a cause of [her] injury."

¶15 The jury rendered a verdict in favor of Ms. Kranendonk on legal malpractice, breach of contract, breach of fiduciary duty, and negligent hiring, training, and supervision grounds, and awarded her $750,000 to compensate for the injuries she suffered in the underlying accident. These damages included $80,000 in economic damages and $670,000 in non-economic damages related to the accident. The jury also awarded her an additional $2.75 million for non-economic damages she sustained as a result of the Swapp Defendants' malpractice. The jury did not award punitive damages.

¶16 The Swapp Defendants thereafter filed a motion for judgment notwithstanding the verdict (JNOV) under rule 50(b) of the Utah Rules of Civil Procedure. They sought to negate Ms. Kranendonk's entitlement to the $2.75 million jury award of non-economic damages under all four legal theories—legal malpractice, breach of contract, breach of fiduciary duty, and negligent hiring, training, and supervision. In Ms. Kranendonk's response to the motion, she conceded that non-economic damages unrelated to the underlying case were not available under her legal malpractice and negligent hiring, training, and supervision claims, but she argued that they were available under her breach of contract and breach of fiduciary duty claims. The district court agreed and denied the Swapp Defendants' motion, upholding the $2.75 million jury award under these two claims.

¶17 After the court upheld the jury's verdict in post-trial proceedings, Ms. Kranendonk moved for attorney fees and the district court awarded her $1,166,666.67—the contingency fee amount she agreed to pay when she hired the new law firm to

represent her in her legal malpractice suit. The district court also awarded her $17,977.82 in costs, but did not award the additional $177,911.64 she had sought in litigation expenses.

¶18 The Swapp Defendants timely appealed the district court's decision to uphold the $2.75 million jury award for non-economic damages unrelated to the personal injury case and the court's award of attorney fees. The Swapp Defendants do not challenge the $750,000 jury award for damages related to the personal injury case. Ms. Kranendonk cross-appeals the district court's decision to exclude Mr. Highberg's two statements demonstrating his ill will toward her and the court's decision not to award litigation expenses. We have jurisdiction to hear this case pursuant to Utah Code section 78A-3-102(3)(j).

## Standard of Review

¶19 The Swapp Defendants raise two issues on appeal: first, whether the district court erred in denying their JNOV motion to set aside the $2.75 million jury award of non-economic damages arising from their malpractice; and second, whether the court erred in awarding Ms. Kranendonk attorney fees in the amount of the full contingency fee. "[A] district court may grant a JNOV motion only if there is no 'basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's determination.'"[2] But "[w]e review rulings on JNOV motions for correctness."[3] Likewise, "[w]hether attorney fees are recoverable in an action is a question of law, which we review for correctness."[4]

¶20 Ms. Kranendonk raises two additional issues for review: whether the district court erred in refusing to award litigation expenses and whether the court erred in excluding Mr. Highberg's two statements under rule 403 of the Utah Rules of Evidence. Whether a court may award litigation expenses is a question of law and so is reviewed for correctness.[5] But "we review [the amount of

---

[2] *ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2013 UT 24, ¶ 18, 309 P.3d 201 (citation omitted).

[3] *Id.*

[4] *Fericks v. Lucy Ann Soffe Tr.*, 2004 UT 85, ¶ 22, 100 P.3d 1200 (citation omitted).

[5] *Campbell v. State Farm Mut. Auto. Ins. Co.*, 2001 UT 89, ¶ 127, 65 P.3d 1134, *rev'd on other grounds*, 538 U.S. 408 (2003).

an award of litigation expenses] under an abuse of discretion standard."[6] Also, "[w]e review a trial court's decision to admit or exclude evidence under Rule 403 of the Utah Rules of Evidence under an abuse of discretion standard, and will not overturn a lower court's determination of admissibility unless it is beyond the limits of reasonability."[7]

**Analysis**

¶21 On appeal, the Swapp Defendants first argue that the district court erred in refusing to vacate the $2.75 million jury award for non-economic damages unrelated to the personal injury case. Specifically, they argue that Utah law precludes recovery of damages beyond the amount the plaintiff would have recovered in the underlying case—i.e., "the case within the case." They assert that such damages are precluded whether the plaintiff brings a malpractice suit under the theory of legal malpractice, breach of contract, or breach of fiduciary duty.

¶22 We have observed on many occasions that "a malpractice action . . . necessarily presents a 'case within a case.'"[8] In other words, a case involving a malpractice action necessarily depends upon an attorney's conduct in a separate, underlying case and whether, absent such conduct, "the underlying suit would have been successful."[9] While we typically have looked to the underlying case when addressing the evidence necessary to establish proximate cause in legal malpractice cases,[10] we have never considered whether

---

[6] *Id.* ¶ 128.

[7] *Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶ 35 n.1, 104 P.3d 1185 (citation omitted).

[8] *Glencore, Ltd. v. Ince*, 972 P.2d 376, 380 (Utah 1998) (citation omitted); *see also Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996) (holding that a legal malpractice case is based in part on a "suit within a suit" or "trial-within-a-trial" (citation omitted)).

[9] *Harline*, 912 P.2d at 439.

[10] *See Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 26, 194 P.3d 931 ("[I]n order to meet the standard for causation for a breach of fiduciary duty in a legal malpractice action, 'clients must show that if the attorney had adhered to the ordinary standards of professional conduct[,] the client would have benefitted.'" (citation omitted)); *Glencore,* 972 P.2d at 380 (stating that when determining
(Continued)

damages are available beyond those damages awardable in the underlying case. This case therefore presents an issue of first impression.

¶23 The court of appeals has, however, recently addressed this issue. In a prior appeal in this same case, the court of appeals held that damages in a malpractice suit should generally be limited to those damages recoverable in the underlying case.[11] Specifically, it asserted that "[t]he measure of damages is generally held to be the value of the plaintiff's lost claim, that is, the actual amount the plaintiff would have recovered had she been successful in the underlying case."[12] The court relied on other jurisdictions for this assertion.[13]

¶24 As a general matter, the court of appeals is correct. In most legal malpractice cases, whether brought under negligence, breach of contract, or breach of fiduciary duty theories, "a plaintiff's damages . . . are limited to the actual amount the plaintiff would have recovered had he been successful in the underlying case."[14] But

---

proximate cause in malpractice, "[t]he objective is to establish what the result [of the underlying litigation] should have been" (second alteration in original) (emphasis omitted) (citation omitted)); *Harline*, 912 P.2d at 439 ("To prove proximate cause in legal malpractice cases . . . the plaintiff must show that absent the attorney's negligence, the underlying suit would have been successful.").

[11] *See Kranendonk v. Gregory & Swapp, PLLC*, 2014 UT App 36, ¶ 28, 320 P.3d 689.

[12] *Id.*

[13] *Id.* (citing *Eastman v. Messner*, 721 N.E.2d 1154, 1158 (Ill. 1999) ("[A] plaintiff's damages in a malpractice suit are limited to the actual amount the plaintiff would have recovered had he been successful in the underlying case.")); *Schultheis v. Franke*, 658 N.E.2d 932, 939–40 (Ind. Ct. App. 1995) ("The law in this state, like the law in most jurisdictions, generally provides that the measure of damages in a legal malpractice case is the value of the plaintiff's lost claim."); *Campagnola v. Mulholland, Minion & Roe*, 555 N.E.2d 611, 613 (N.Y. 1990) (stating that the measure of damages in a legal malpractice suit is "the value of the claim lost"); 3 Ronald E. Mallen & Jeffrey M. Smith, LEGAL MALPRACTICE § 21.1, at 3 (2013 ed.)).

[14] *Eastman*, 721 N.E.2d at 1158.

there may be exceptions to this rule depending on which legal theory is asserted.

¶25 We have long held that "[a]n action for legal malpractice may be framed conceptually as either a tort or a breach of contract."[15] So, when bringing a legal malpractice suit, "[c]lients . . . may sue for damages based on breach of contract, breach of fiduciary duty, or negligence."[16] Usually, the elements required to prove negligence and breach of fiduciary duty in the legal malpractice context are "substantially the same,"[17] so a plaintiff's choice to classify its malpractice claim under one of the two theories does not cause "any difference in result."[18] This is so because "[m]ost rules applicable to negligence actions also apply to actions for breach of fiduciary duty."[19] But an action for breach of contract is "very different" from these other two legal malpractice theories.[20] The "[r]ules of contract, not rules of legal malpractice, govern an action" brought under a breach of contract theory.[21] In that vein, damages that may be awarded under these theories may also differ.

---

[15] *Christensen & Jensen*, 2008 UT 64, ¶ 21 (quoting *Dunn v. McKay, Burton, McMurray & Thurman*, 584 P.2d 894, 904 (Utah 1978) (Maughan, J., dissenting)).

[16] *Id.* (citation omitted).

[17] *Id.* ¶ 23; *see also id.* ¶¶ 22–23 ("In a legal malpractice action based on negligence, a plaintiff must prove '(i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages.' . . . [T]he elements required for a legal malpractice claim based on a breach of fiduciary duty [are]: '(1) an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and (4) damages suffered by the client.'" (citations omitted)).

[18] *Id.* ¶ 23 n.7 (citation omitted).

[19] *Id.* (citation omitted).

[20] *Id.* ¶ 24.

[21] *Id.* (alteration in original) (citation omitted).

¶26 Below, the district court held that non-economic damages may be awarded beyond damages based on the case within the case when the plaintiff establishes legal malpractice under a breach of contract or breach of fiduciary duty theory.[22] The Swapp Defendants challenge the court's conclusion on these two grounds. Accordingly, we address whether an award of non-economic damages unrelated to the underlying case is appropriate under these two legal theories.

## I. Breach of Contract

¶27 The Swapp Defendants first argue that the $2.75 million jury award for non-economic damages cannot be supported under a breach of contract theory in this case. Because Ms. Kranendonk cannot point to specific language or obligations in her contract with Mr. Highberg that show that emotional damages were contemplated by them at the time they formed the contract, we hold that the district court erred in affirming the $2.75 million jury award under this theory.

¶28 Normally "there is no recovery of damages for mental anguish stemming from a breach of contract."[23] This is so because "an award of damages in a breach of contract case attempts to 'place the aggrieved party in the same economic position the party would have been in if the contract was not breached.'"[24] In the legal malpractice context, this means that typically the only emotional damages recoverable under a breach of contract theory are those

---

[22] The court did not, however, address whether a negligence theory of malpractice could support damages beyond case-within-a-case damages and the parties do not argue this theory on appeal. The district court reasoned that because "the jury verdict on Plaintiff's claims for breach of fiduciary duty and breach of contract provides an adequate basis for the award of noneconomic damages," the court "need not address the Defendants' arguments regarding Plaintiff's claims for professional negligence and negligent training."

[23] *Cabaness v. Thomas*, 2010 UT 23, ¶ 72, 232 P.3d 486 (citation omitted).

[24] *Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 26, 194 P.3d 931 (citation omitted).

stemming from the injury in the underlying case. But we have noted that an exception to this rule may exist in "unusual circumstances."[25]

¶29 In *Cabaness v. Thomas*, we held that "a non-breaching party may recover general and/or consequential damages related to emotional distress or mental anguish arising from a breach of contract when such damages were both a foreseeable result of the breach of contract and *explicitly* within the contemplation of the parties at the time the contract was entered into."[26] These requirements guarantee that "the applicability of such damages 'will always hinge upon the nature and language of the contract and the reasonable expectations of the parties.'"[27] Accordingly, we held that the exception is implicated only when the plaintiff can point to "specific language" and "obligations" in the contract that show that emotional damages were in contemplation of the parties at the time the parties formed the contract.[28] But this seldom happens.

¶30 Emotional damages for a breach of contract are awardable only in "rare cases" because "such damages are rarely a foreseeable result of breach."[29] While "[s]ome type of mental anguish, anxiety, or distress is apt to result from the breach of any contract which causes pecuniary loss," it is well established that these damages are not "the 'natural and probable' result of the breach" and "are deemed to be too remote to have been in the contemplation of the parties at the time the contract was entered into to be considered as an element of compensatory damages."[30] Something in the contract, therefore, must show that the parties contemplated granting relief for more

---

[25] *Cabaness*, 2010 UT 23, ¶ 72.

[26] *Id.* ¶ 75.

[27] *Id.* (quoting *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 802 (Utah 1985)).

[28] *Id.* ¶ 76. While we stated in *Cabaness* that we focus on the "reasonable expectations of the parties," *id.* ¶ 75, our focus has always been on the contract language. So while we do consider the expectations of the parties when determining damages in the breach of contract context, we consider only those expectations that are apparent from the language of the contract.

[29] *Id.* ¶¶ 74–75.

[30] *Id.* ¶ 74 (alteration in original) (citations omitted).

than the typical mental anguish and discouragement that results from a breach of contract.

¶31 *Cabaness* illustrates this point. In *Cabaness*, we reversed a district court's grant of summary judgment against an employee seeking emotional damages for a breach of contract by his employer. There, we reviewed the employment contract, which stated that the employer would "not tolerate verbal or physical conduct by any employee which harasses, disrupts, or interferes with another's work performance or which creates an intimidating, offensive, or hostile work environment."[31] We noted the significance of this provision, stating that it appeared to be "specifically directed toward matters of mental concern and solicitude."[32] We explained that given "the unusual nature of the contractual obligations and the specific language of the contractual provisions," it was "possibil[e] that emotional damages were within the contemplation of the parties at the time the contract was entered."[33] We therefore concluded that questions of fact remained regarding whether "emotional damages were within the contemplation of the parties at the time the contract was formed," and accordingly remanded the case to the district court to make such a determination.[34] *Cabaness* therefore stands for the proposition that non-economic damages are supported under a breach of contract theory only where the specific language and nature of the contract demonstrates that such damages were contemplated.[35]

---

[31] *Id.* ¶ 76.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] It could be argued that the result we reached on the facts of *Cabaness* does not square with the standard we articulated in that case, which is that there must be an explicit provision in the contract contemplating emotional distress damages. The provision at issue in *Cabaness* did not expressly state that a breach of the employment contract could produce emotional damages. *See Cabaness*, 2010 UT 23, ¶ 76. It merely stated that the employer would not tolerate harassment or other conduct that would create a hostile work environment. *See id.* We held that this provision created a genuine issue of material fact as to whether the parties contemplated

(Continued)

¶32 But here the district court misapplied *Cabaness* and the "rare" exception we articulated there. The court held that there was competent evidence supporting the finding that Ms. Kranendonk's emotional distress damages were foreseeable and explicitly contemplated by the parties. But the court failed to review the contract at issue. Instead, it improperly relied on testimony and extrinsic evidence to determine that emotional distress damages were contemplated. Specifically, it relied on testimony that Mr. Highberg knew Ms. Kranendonk was a "very anxious person," language from the Swapp Defendants' website asserting that they will "eliminate[] the stress and uncertainty of dealing with [an] accident," and Craig Swapp's testimony, in which he acknowledged that "one of the Defendants' jobs is to minimize [] stress, to take care of the problems, to take care of the difficulties of the case, to manage the case and get everything done so the client doesn't have to stress about that." This was error. As *Cabaness* mandates, the district court should have analyzed whether the nature and language of the contract plainly show that non-economic damages were explicitly contemplated by the parties at the time the contract was formed. Had it done so, the court would have concluded that nothing in the contract suggests non-economic damages were contemplated here.

¶33 First, nothing in the "nature" of the contract signals that emotional distress damages were a foreseeable result of a breach. The Restatement (Second) of Contracts states that "[r]ecovery for emotional disturbance will be excluded unless . . . the breach is of *such a kind* that serious emotional disturbance was a particularly likely result."[36] Most courts that have found emotional distress damages are a foreseeable result of a breach in legal malpractice cases have done so because the character or purpose of the contract involved some "peculiarly personal subject matter[]"[37]—like

---

emotional distress damages at the time they formed the contract. *Id.* We did not hold that the provision illustrated that the parties expressly contemplated emotional distress damages. To the extent that *Cabaness* is inconsistent with our holding today, we disavow its holding to conform to this opinion.

[36] RESTATEMENT (SECOND) OF CONTRACTS § 353 (1981) (emphasis added).

[37] *Miranda v. Said*, 836 N.W.2d 8, 24 (Iowa 2013) (citation omitted).

wrongful conviction,[38] custody of a child,[39] or mental health determinations.[40] As the Eleventh Circuit has explained:

> [I]n the ordinary commercial contract, damages are not recoverable for disappointment, even amounting to alleged anguish, because of breach. Such damages are . . . too remote. But these are contracts entered into for the accomplishment of a commercial purpose. Pecuniary interests are paramount . . . . [I]t has long been settled that recovery therefor was not contemplated by the parties as the natural and probable result of the breach. Yet not all contracts are purely commercial in their nature. Some involve rights we cherish, dignities we respect, emotions recognized by all as both sacred and personal. In such cases the award of damages for mental distress and suffering [are] commonplace . . . .[41]

---

[38] *See* D. Dusty Rhoades & Laura W. Morgan, *Recovery for Emotional Distress Damages in Attorney Malpractice Actions*, 45 S.C. L. REV. 837, 845 (1994) ("When an attorney's negligence causes a client's loss of liberty, courts have been willing to step away from the general rule barring damages for emotional distress.").

[39] *See Person v. Behnke*, 611 N.E.2d 1350, 1353 (Ill. App. Ct. 1993) ("We hold that a valid claim exists for noneconomic damages resulting from a plaintiff's loss of custody and visitation of his children which allegedly resulted from an attorney's negligence."); *McEvoy v. Helikson*, 562 P.2d 540, 544 (Or. 1977) (holding plaintiff could obtain emotional distress damages when attorney negligence surrounding divorce and child custody proceedings resulted in plaintiff's ex-wife fleeing to Switzerland with their child), *superseded on other grounds by Or. R. Civ. P. 18*, *as recognized in Moore v. Willis*, 767 P.2d 62, 64 (Or. 1988).

[40] *Wagenmann v. Adams*, 829 F.2d 196, 221–22 (1st Cir. 1987) (holding emotional distress damages are available when attorney negligence results in the client being "forcibly deprived of his liberty and dispatched to a mental hospital").

[41] *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1200 (11th Cir. 2007) (second, third, fourth, and sixth alterations in original) (quoting *Stewart v. Rudner*, 84 N.W.2d 816, 823 (Mich. 1957)).

We agree with these courts. We therefore look to the nature of the contractual obligations in assessing whether emotional distress damages may be awardable under breach of contract claims. Specifically, we look to whether the subject matter of the contract involves peculiarly personal interests, as opposed to rights stemming from monetary interests. When the primary nature of the contractual obligations involves peculiarly personal interests, as opposed to pecuniary interests, emotional distress damages stemming from a breach of that contract may be warranted. But that is not the case here.

¶34 Here, the nature of the contract formed by the Swapp Defendants did not involve peculiarly personal interests. Ms. Kranendonk hired Mr. Highberg to bring a personal injury suit to recoup pecuniary damages for her injuries. So the purpose of Mr. Highberg's contractual obligation was solely to obtain monetary compensation—not to protect personal interests. Although an argument can be made that Ms. Kranendonk also contracted, as she suggests, for peace of mind, the peace of mind a plaintiff seeks in a personal injury case is generally still tied to monetary interests—e.g., having sufficient funds to pay medical expenses and other bills while recovering from a physical injury. Because pecuniary interests were paramount in this case, we cannot say that the mental anguish Ms. Kranendonk suffered as a result of the breach was explicitly contemplated by the parties.

¶35 Additionally, the specific language of the contract does not show that emotional distress damages were explicitly contemplated by the parties. The contract between the Swapp Defendants and Ms. Kranendonk is void of any language related to mental or emotional harm. Instead, the contract here simply stated that the Swapp Defendants "will utilize its best efforts to obtain a settlement or judgment for [Ms. Kranendonk] through negotiation or other legal action." Ms. Kranendonk argues that this "best effort" provision includes making sure the client has peace of mind. But this provision specifically provides that the Swapp Defendants will use their best efforts to secure a monetary "settlement or judgment." So even the "best efforts" provision is not ambiguous in its focus on a pecuniary, and not a personal, interest. And, in fact, every section of the contract deals solely with pecuniary interests.[42] The language of the

---

[42] The first section of the contract states that the "Purpose of Employment" is for the Swapp Defendants to "represent you with

(Continued)

contract therefore does not show that emotional damages were explicitly contemplated.[43]

---

respect to your claim for damages" and to "utilize its best efforts to obtain a settlement or judgment." The second section deals with the attorney fee structure, setting forth the percentage the Swapp Defendants will be paid of the monetary settlement or judgment they obtain. The third section of the contract outlines who will pay for costs in the litigation. And the last section states that the Swapp Defendants "make no warranties or representations regarding the amount of recovery, if any, or the successful outcome of your claim." These provisions clearly show the contract was made primarily for pecuniary purposes.

Ms. Kranendonk argues, however, that this contract resembles contracts beneficiaries make with insurance companies—contracts we have held can warrant "damages for mental anguish" because "it is axiomatic that insurance frequently is purchased not only to provide funds in case of loss, but to provide peace of mind for the insured or his beneficiaries." *Beck*, 701 P.2d at 802. As stated above, an argument can be made that clients retain attorneys in personal injury cases not only to obtain monetary compensation, but also to provide peace of mind, and therefore mental anguish is fairly contemplated in the contract. But the *Beck* court went on to say that "[t]he foreseeability of any such damages will always hinge upon the nature and language of the contract and the reasonable expectations of the parties" and that "damages will not be available for the mere disappointment, frustration, or anxiety normally experienced in the process of filing an insurance claim and negotiating a settlement with the insurer." *Id.* at 802 & n.6. As discussed above, the nature and language of the contract here do not support emotional distress damages in this case.

[43] Ms. Kranendonk argues that the Swapp Defendants' website ensures that it will reduce the stress a client has in his or her personal injury claim—an argument the district court also relied on in its determination to uphold the jury award of non-economic damages. But Ms. Kranendonk and the district court are mistaken. The website is not part of the four corners of the document we review. "When interpreting a contract, [we] first look[] to the contract's four corners to determine the parties' intentions, which are controlling." *Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶ 34, 308 P.3d 424 (citation omitted). And, when "the language within the four corners of the contract is unambiguous[,] . . . [we] determine[] the

(Continued)

¶36 Because the nature and language of the contract in this case do not show that emotional distress damages were explicitly contemplated by the parties, the district court erred in upholding the $2.75 million jury award for non-economic damages under a breach of contract theory.

## II. Breach of Fiduciary Duty

¶37 In addition to breach of contract, the district court denied the Swapp Defendants' JNOV motion on the $2.75 million jury award under a separate legal theory—breach of fiduciary duty.[44] The Swapp Defendants argue that this was also error. Specifically, they contend that Mr. Highberg's breach did not rise to a level of willful or outrageous conduct—a standard they believe a plaintiff must meet in order to obtain an award of emotional distress damages under a breach of fiduciary duty theory. Additionally, they argue that even if emotional distress damages are recoverable under a breach of fiduciary duty theory in this case, the $2.75 million jury award should be vacated because it was not sufficiently supported by the evidence. We agree with their second argument. There is no evidentiary basis on which the jury could have awarded non-economic damages for Ms. Kranendonk's breach of fiduciary duty claim. Accordingly, we do not reach the important question of when, if ever, a plaintiff may recover emotional distress damages for a breach of fiduciary duty in the attorney malpractice context.

¶38 In order to win on a breach of fiduciary duty claim in the legal malpractice context, a plaintiff must show (1) the existence of "an attorney-client relationship; (2) breach of the attorney's fiduciary duty to the client; (3) causation, both actual and proximate; and

---

parties' intentions from the plain meaning of the contractual language as a matter of law." *Fairbourn Commercial Inc. v. Am. Hous. Partners, Inc.*, 2004 UT 54, ¶ 10, 94 P.3d 292 (second alteration in original) (citation omitted). Here, the contract is unambiguous and so we do not consider the website as evidence of the parties' intentions in signing the agreement.

[44] The district court did not engage with this theory on the merits. It simply stated that it chose not to review, under the law of the case doctrine, its prior decision that the jury "could properly award Plaintiff noneconomic damages based on a finding of liability with regard to any of Plaintiff's malpractice claims," including breach of fiduciary duty.

(4) damages suffered by the client."[45] While each of these elements is necessary to establish a claim, we have identified the causation element as a particularly "crucial and distinct element to any malpractice claim."[46] As such, we have held that "an abundance of evidence as to breach of duty cannot make up for a deficiency of evidence as to causation."[47]

¶39 The Swapp Defendants moved for JNOV below in part on causation grounds, which the district court denied. They argue this was error. In order for the Swapp Defendants "[t]o successfully attack a district court's refusal to grant a motion for JNOV based on insufficient evidence, [they] 'must marshal all the evidence supporting the verdict and then demonstrate that, even viewing the evidence in the light most favorable to that verdict, the evidence is not sufficient to support it.'"[48] "[W]e will not overturn a verdict on a challenge to the sufficiency of evidence '[s]o long as some evidence and reasonable inferences support the jury's findings.'"[49] While this is a "very difficult burden" to meet,[50] we hold that the Swapp Defendants have met it.

¶40 The Swapp Defendants have demonstrated that no competent evidence exists to support the jury's determination of causation or damages. After reviewing all the evidence supporting the jury award of non-economic damages, we conclude that it is clear Ms. Kranendonk failed to provide any evidence that Mr. Highberg's breach of the fiduciary duty (i.e., his intentional concealment of the fact that he had lost her claim) caused the mental anguish she experienced. Rather, the evidence provided at trial shows only that she suffered emotional distress due to Mr. Highberg's legal malpractice (i.e., his negligence in losing her claim)—conduct that

---

[45] *Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 23, 194 P.3d 931 (citation omitted).

[46] *USA Power, LLC v. PacifiCorp*, 2016 UT 20, ¶ 113, 372 P.3d 629.

[47] *Id.*

[48] *Hess v. Canberra Dev. Co.*, 2011 UT 22, ¶ 28, 254 P.3d 161 (citation omitted).

[49] *Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 36, 31 P.3d 557 (second alteration in original) (citation omitted).

[50] *Grossen v. DeWitt*, 1999 UT App 167, ¶ 7, 982 P.2d 581 (citation omitted).

both parties concede cannot support non-economic damages in this case.[51]

¶41 For example, Mr. Kranendonk testified at trial that Ms. Kranendonk was "devastated," "hysterical," and "crying," but this testimony was in response to her counsel's question regarding her reaction "when she got the news that her case was dead." Mr. Kranendonk said nothing about Ms. Kranendonk's reaction when she learned about Mr. Highberg's intentional concealment and dishonesty—the actions necessary to support her breach of fiduciary duty claim. Similarly, Ms. Kranendonk testified herself that she "was devastated," but did so only in response to counsel's question regarding "[h]ow [she] fe[lt] when [she] heard that [her] case was dead?" And she again testified that she was devastated "[o]nce [Mr. Highberg] told us that the ball had been dropped." She never testified about her reaction to learning that Mr. Highberg had intentionally concealed his legal malpractice from her for ten months, or whether his intentional actions caused her harm.

¶42 We have held that "[i]f the client's injury would have occurred regardless of the attorney's action, then there is no causation."[52] Here, nothing at trial suggests that Ms. Kranendonk's mental distress would not have occurred if Mr. Highberg had not concealed his malpractice from her. Instead, the evidence suggests that Ms. Kranendonk's mental distress would still have occurred because Mr. Highberg lost her personal injury claim.

¶43 Additionally, none of the testimony from the Swapp Defendants shows that Ms. Kranendonk's emotional damage occurred as a result of Mr. Highberg's concealment and dishonesty in this case. At trial, Mr. Highberg testified that "[i]t *could* be emotionally catastrophic" to his clients if he didn't do his job well. Mr. Swapp likewise acknowledged that an attorney's malpractice "*can* create a lot of mental distress" for a client, and that determining how to get the case resolved after the malpractice "*can* be very stressful for a client." But testimony that an attorney's malpractice

---

[51] Ms. Kranendonk conceded in her rule 50(c) response below that non-economic damages were not available under her legal malpractice and negligent hiring, training, and supervision claims. She likewise has conceded in her briefing before us that these claims cannot support an award of non-economic damages.

[52] *USA Power*, 2016 UT 20, ¶ 115.

*could* cause emotional damages is not enough to support a finding that Mr. Highberg's concealment and dishonesty *did* cause emotional damages. "To prove damages, [a] plaintiff must prove . . . the fact of damages."[53] This means that the plaintiff must provide evidence that "do[es] more than merely give rise to speculation that damages in fact occurred; it must give rise to a reasonable probability that the plaintiff suffered damage as result of a breach."[54] The testimony of the Swapp Defendants leaves us wondering whether any mental anguish from Mr. Highberg's concealment in fact occurred. And the testimony that Ms. Kranendonk was "devastated" when she learned that her "case was dead" does not help.

¶44 While Ms. Kranendonk provided sufficient evidence to show that Mr. Highberg had a fiduciary duty to her, and that he breached that duty, this evidence is insufficient to support an actionable claim for breach of fiduciary duty. "[A]n abundance of evidence as to breach of duty cannot make up for a deficiency of evidence as to causation."[55] Nor can it make up for a deficiency of evidence as to damages. Ms. Kranendonk needed to also provide evidence that Mr. Highberg's breach of his fiduciary duty caused Ms. Kranendonk mental anguish. This she failed to do.

¶45 So we hold that the jury had no evidence upon which to base its verdict that Ms. Kranendonk suffered emotional distress damages as a result of Mr. Highberg's intentional concealment and, therefore, the district court erred in dismissing the Swapp Defendants' motion for JNOV under a breach of fiduciary duty theory. And because the $2.75 million jury award for non-economic damages is not supported under either a breach of contract or breach of fiduciary claim in this case, we vacate it.

### III. Attorney Fees and Litigation Expenses

¶46 The Swapp Defendants finally argue that the district court erred in awarding Ms. Kranendonk $1,166,666.67 in attorney fees. Specifically, they contend that the court "misread the scope" of the

---

[53] *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985).

[54] *Id.*; *see also State v. Ogden*, 2018 UT 8, ¶ 52, 416 P.3d 1132 ("[A]n award of damages based only on speculation cannot be upheld . . . ." (citation omitted)).

[55] *USA Power*, 2016 UT 20, ¶ 113.

fiduciary duty exception to the American rule for attorney fees as set forth in *Campbell v. State Farm Mutual Automobile Insurance Co.*[56] On cross-appeal, Ms. Kranendonk also claims that the district court erred in declining to award $177,911.64 in litigation expenses under *Campbell*. But because we find there is insufficient evidence to support Ms. Kranendonk's breach of fiduciary claim, we hold that the district court erred in awarding attorney fees. And, for the same reason, we hold that it correctly denied litigation expenses in this case.

¶47 "In general, Utah follows the traditional American rule that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award."[57] But there are exceptions to this rule. In *Campbell*, we noted "that breach of a fiduciary obligation is a well-established exception to the American rule precluding attorney fees in tort cases generally."[58] We therefore held that not only may a party recover attorney fees under a first-party bad faith claim against an insurer—a claim sounding in contract—but they may also do so under a third-party bad faith claim against an insurer—a claim sounding in tort.[59] We also concluded that, "[f]or the same reasons . . . regarding attorney fees, . . . litigation expenses are recoverable in this limited type of action."[60]

¶48 Relying on our holding in *Campbell*, the district court awarded Ms. Kranendonk attorney fees under her breach of fiduciary claim, but refused to award her all of her litigation

---

[56] 2001 UT 89, ¶ 122, 65 P.3d 1134, *rev'd on other grounds*, 538 U.S. 408 (2003).

[57] *Utahns for Better Dental Health–Davis, Inc. v. Davis Cty. Clerk*, 2007 UT 97, ¶ 5, 175 P.3d 1036 (citation omitted); *see also Neff v. Neff*, 2011 UT 6, ¶ 77, 247 P.3d 380 ("The general rule for attorney fees in tort cases is that the parties are each responsible for their own fees. Under this rule, commonly referred to as the 'American Rule,' the prevailing party may generally only recover fees if a statutory or contractual provision entitles that party to such an award.") (internal footnote omitted)).

[58] 2001 UT 89, ¶ 122.

[59] *Id.* ¶¶ 120–22.

[60] *Id.* ¶ 127.

expenses. The Swapp Defendants take issue with the attorney fees award. They contend that our statement in *Campbell* was never meant to operate as an endorsement of attorney fee awards in all breach of fiduciary duty cases. Instead, they argue that *Campbell* permitted an award of attorney fees in rare circumstances where the breach is "particularly egregious"—a fact not present in most legal malpractice cases. While the Swapp Defendants raise an important question, we decline to answer it because Ms. Kranendonk failed to establish that a breach of fiduciary duty occurred in this case. And because no breach of fiduciary duty exists in this case, no ground remains on which the district court could have properly awarded attorney fees.[61] Accordingly, we vacate the court's award of $1,166,666.67 in attorney fees.

¶49 We likewise refuse, under the same reasoning, to overturn the district court's denial of litigation expenses. Below, the district court declined to award litigation expenses and chose to "award instead only those costs properly taxable" under rule 54 of the Utah Rules of Civil Procedure to Ms. Kranendonk—an amount it set at $17,977.82. On cross-appeal, Ms. Kranendonk argues that the district court erred in failing to award her $177,911.64 in litigation expenses and granting only "costs." She contends that, under *Campbell*, all litigation expenses are recoverable in a legal malpractice action brought under a breach of fiduciary duty claim.[62] But because Ms. Kranendonk's breach of fiduciary duty claim cannot be established in this case, there is no basis to support her recovery of

---

[61] Like the district court, Ms. Kranendonk relies exclusively on the breach of fiduciary duty exception under *Campbell* for support of her award of attorney fees in this case. She did not argue, nor did the district court find, that the court's award of attorney fees was supported by contract or statute, or that a different exception to the American rule applies.

[62] In *Campbell*, State Farm argued that, "like attorney fees, litigation expenses may not be awarded as damages in a tort action." 2001 UT 89, ¶ 127. The court rejected this argument, holding that "[f]or the same reasons detailed in the previous section regarding attorney fees, we conclude that litigation expenses are recoverable in this limited type of action." *Id.* The court went on to reason that "litigation expenses incurred by plaintiffs [were] . . . foreseeable to State Farm" and therefore were warranted in this case. *Id.* (alterations in original).

litigation expenses. We therefore affirm the district court's denial of litigation expenses.[63]

## IV. Exclusion of Mr. Highberg's Statements

¶50 Lastly, on cross-appeal, Ms. Kranendonk contends that the district court improperly excluded Mr. Highberg's statements that he believed Ms. Kranendonk was "a moron" and a "pain [in] the ass" — evidence she claims supports her prayer for punitive damages. Specifically, she argues that the district court failed to conduct a proper rule 403 analysis when it chose to exclude these statements. Alternatively, she asserts that the court abused its discretion in its rule 403 determination by failing to admit the only rebuttal evidence Ms. Kranendonk had "about what motivated [Mr. Highberg] to breach his fiduciary duties." But because there is insufficient evidence to establish an actionable breach of fiduciary duty claim — the only claim that arguably contemplates willful and malicious conduct — no cognizable cause of action exists that would support a punitive damage award. Accordingly, this issue is moot.

¶51 "In Utah, punitive damages are available only upon clear and convincing proof of 'willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of others.'"[64] This means that "simple negligence will not support

---

[63] Although the parties dispute the trial court's denial of litigation expenses, neither party has challenged the court's award of "costs" under rule 54 of the Utah Rules of Civil Procedure. *See* UTAH R. CIV. P. 54(d)(1) ("Unless a statute, these rules, or a court order provides otherwise, costs should be allowed to the prevailing party."); *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 42, 70 P.3d 35 ("[T]here is a distinction to be understood between the legitimate and taxable 'costs' and other 'expenses' of litigation which may be ever so necessary, but are not properly taxable as costs." (citation omitted)). Accordingly, we do not disturb this award.

[64] *Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 27, 82 P.3d 1064 (citation omitted); *see also* UTAH CODE § 78B-8-201(1)(a) ("[P]unitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that

(Continued)

punitive damages," but "negligence manifesting a knowing and reckless indifference toward the rights of others will."[65] Additionally, "punitive damages cannot be awarded for a breach of contract," unless "the breach of contract amounts to an independent tort."[66]

¶52  Here, the jury awarded damages on four causes of actions—legal malpractice, breach of contract, breach of fiduciary duty, and negligent hiring, training, and supervision. But only Ms. Kranendonk's breach of fiduciary duty action could conceivably support a punitive damage award in this case. This is so because her other claims are predicated upon simple negligence and traditional breach of contract theories—theories that cannot support punitive damage awards. First, Ms. Kranendonk's legal malpractice claim rested on simple negligence—that the Swapp Defendants failed "to use the same degree of care, skill, judgment and diligence used by reasonably careful attorneys under similar circumstances." Her negligent hiring, training, and supervision claim likewise was based on simple negligence—that the Swapp Defendants were negligent in failing to recruit, train, and supervise sufficient attorneys and staff "so that they would be able to provide professional and competent legal services." And lastly, her breach of contract claim, like all breach of contract claims, was based on contract principles and so did not amount to an independent tort.[67] These three claims therefore could not support a punitive damage award as a matter of law.

---

manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.").

[65] *Smith*, 2003 UT 41, ¶ 27 (citation omitted).

[66] *Norman v. Arnold*, 2002 UT 81, ¶ 35, 57 P.3d 997 (citation omitted).

[67] While an argument can be made that the Swapp defendants' breach of contract amounted to an independent tort—a breach of fiduciary duty—Ms. Kranendonk specifically couched these actions as separate, distinct claims. And the jury made its determination under this framework. So we cannot say that the Swapp Defendants' breach of contract amounted to a breach of fiduciary duty. That action was separately pled.

¶53 Ms. Kranendonk's breach of fiduciary duty claim, however, conceivably could support a punitive damage request.[68] And since this claim was the only claim upon which the jury could possibly have awarded punitive damages, the fate of Ms. Kranendonk's argument on cross-appeal necessarily depends on the success of that claim.[69] But, as stated above, Ms. Kranendonk's breach of fiduciary duty claim fails because the jury had insufficient evidence to conclude that an actionable breach occurred in this case. This means that there is no cognizable claim upon which her prayer for punitive damages may be based.[70] So Ms. Kranendonk's cross-appeal is moot because, regardless of our decision, she cannot receive the punitive damages she seeks.

¶54 An issue "may be mooted on appeal if 'the relief requested' is rendered 'impossible or of no legal effect.'"[71] This is so because without the possibility of relief, "anything we might say about the issue[] would be purely advisory."[72] Regardless of our decision on the admissibility of Mr. Highberg's two statements, Ms. Kranendonk's prayer for punitive damages cannot be granted because no cognizable claim exists to support such an award. Anything we might say on the matter would therefore be purely advisory. Accordingly, the issue is moot.

---

[68] *See Norman*, 2002 UT 81, ¶ 35 ("In Utah, a claim for breach of fiduciary duty is an independent tort . . . and can serve as the basis for punitive damages.").

[69] While Ms. Kranendonk also pled, and the jury heard, a claim of fraudulent non-disclosure—a claim that conceivably could support a punitive damage award—the jury did not find that she had established by clear and convincing evidence that the Swapp Defendants fraudulently failed to disclose important facts to her, and she has not challenged that finding on appeal. So her breach of fiduciary duty claim is the only claim on which she could seek punitive damages in this case.

[70] *See Norman*, 2002 UT 81, ¶ 8 n.2 (stating that punitive damages "must be requested in conjunction with a cognizable cause of action").

[71] *Transp. All. Bank v. Int'l Confections Co.*, 2017 UT 55, ¶ 15, --- P.3d --- (citation omitted).

[72] *Id.* (citation omitted).

**Conclusion**

¶55  The Swapp Defendants claim that, under either a breach of contract or breach of fiduciary duty theory, the district court erred in upholding the $2.75 million jury award for emotional distress damages unrelated to the underlying case. We agree. Ms. Kranendonk's breach of contract claim cannot support these damages, because such emotional distress was not explicitly contemplated by the parties. The jury award also cannot be supported under her breach of fiduciary duty claim, because the jury had no evidence that the Swapp Defendants' concealment and dishonesty caused Ms. Kranendonk harm. We accordingly reverse the district court's decision denying the Swapp Defendants' JNOV motion and vacate the $2.75 million jury award.

¶56  We also vacate the district court's award of $1.666,667.67 in attorney fees because Ms. Kranendonk's breach of fiduciary duty claim—the only claim that could support this award—failed. And we hold that her claim on cross-appeal for litigation expenses also fails for the same reason.

¶57  Finally, we decline to reach Ms. Kranendonk's challenge of the district court's decision to exclude Mr. Highberg's two statements. Ms. Kranendonk seeks the admission of these statements in order to support her prayer for punitive damages. But because her breach of fiduciary duty claim fails, punitive damages cannot be awarded in this case regardless of our decision on this issue. So the issue is moot.

---